UNITED STATES of America, Appellee,

v.

Harold W. KISTNER, Appellant.

No. 94–3172.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1995.

Decided Oct. 12, 1995.

Elkin Kistner, St. Louis, Missouri, argued, for appellant.

Frederick James Dana, Assistant United States Attorney, argued, for appellee.

Before HANSEN, HEANEY, and MURPHY, Circuit Judges.

DIANA E. MURPHY, Circuit Judge.

Appellant Harold Kistner received a ticket for distributing printed matter without a permit at the Jefferson National Expansion Memorial. A magistrate judge found Kistner guilty of violating 36 C.F.R. § 2.52(a), a petty offense, and fined him $50.00;[1] his conviction was affirmed by the district court.[2] Kistner admits that he distributed pamphlets without a permit and that he did not apply for one, but he claims that his noncompliance with the permit requirement was justified under the First Amendment. We affirm for the reasons discussed below.

## I.

The National Park Service, a division of the United States Department of the Interior, manages the Jefferson National Expansion Memorial in St. Louis, Missouri. The Park Service is charged by Congress with regulating the use of national parks to "conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations." 16 U.S.C. § 1. The Memorial park is the site of the Arch and is commonly referred to as the Arch grounds.

On July 4, 1992, shortly before 6:00 p.m., Kistner and a friend were distributing pamphlets at the foot of the Arch, where approximately 50,000 to 60,000 people had gathered for an air show at the Veiled Prophet Fair. (The annual fair attracts up to 300,000 people daily.) The pamphlets contained Bible quotations and other religious verses. The two men also carried cardboard signs, approximately one and one half by two feet, which were attached to wooden sticks about two feet long.

Park Rangers Bland and Carlson approached the men and explained that under 36 C.F.R. § 2.52(a) a permit was needed to distribute their materials. This regulation provides that:

> The sale or distribution of printed matter is allowed within park areas, provided that a permit to do so has been issued by the superintendent, and provided further that the printed matter is not solely commercial advertising.

Carlson later testified that he told Kistner that he could apply for a permit at the Old Courthouse or at a temporary site on the Arch grounds, gave him directions to the latter location, and offered to radio ahead that he was coming. The rangers also told Kistner that no permit was needed to distribute pamphlets if he moved to Leonor K. Sullivan Boulevard, which runs along the border of the Arch grounds. After Kistner and his friend declined these options and "refused to cease their expressive activities," Appellant's Brief at 2, Ranger Bland issued them citations for violating the regulation and confiscated their signs and pamphlets. They then left the Arch grounds.

Kistner refused to pay the $50.00 fine, and a trial was held before a magistrate judge. Ranger Carlson testified at the trial that Kistner had said that God had told him to spread the word, that he did not need a permit and would not talk to anybody about getting one, and that God's rules were higher than those of the government. Carlson also stated that the wooden stick on Kistner's sign posed a safety concern in the crowded area because it could have injured someone's eyes or body.

A National Park Service captain testified that officials were available on the Arch grounds every day of the fair to process permit applications in about 35 minutes. The process involved a brief interview and a verbal outline of the conditions for obtaining a permit; permits were issued on site.

Permit conditions are listed in a Park Service "Policy Statement on the Sale and Dis-

---

1. The Hon. Frederick R. Buckles, United States Magistrate Judge for the Eastern District of Missouri.

2. The Hon. Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

tribution of Printed Matter" for the Jefferson Memorial.[3] The general statement in this two page form indicates that only the time, place, and manner for First Amendment activities are to be regulated under 36 C.F.R. § 2.52. Provisions listed in the policy statement include the time period permit holders may conduct their activities, the fact that locations will be designated on a map attached to each permit, and the rules against littering, harassing park visitors, or otherwise endangering public health, safety, and welfare.

Evidence was introduced concerning several permits that had been granted for the distribution of materials on July 4, 1992. The entire Arch grounds was authorized for distribution of religious literature by seventy people under one permit and of campaign literature under another permit. Southwestern Bell set up a voter registration table, and Citizens for Perot applied for and received a permit that day for twelve distributors. The permits restricted their holders from carrying signs with sticks, obstructing or impeding pedestrians or vehicles, harassing park visitors with physical contact or persistent demands, or misrepresenting their purposes.

Kistner represented himself at trial, testified on his own behalf, and cross-examined government witnesses. After waiving opening statements, Kistner testified that he talked with and distributed pamphlets to at least three individuals. He stated that some people made hostile remarks to him and that he believed the rangers had responded to public pressure to suppress his message. He admitted telling the rangers that "God's law is higher than man's law." Kistner claimed that he asked Ranger Bland if it would take a week to get a permit and that he responded "probably." Kistner asked Ranger Carlson if he recalled such an exchange, and Carlson said he did not. Kistner also confirmed that the rangers repeatedly told him he would not need a permit on the adjacent boulevard, but claimed that this was the only alternate option they gave him.

## II.

On appeal, Kistner contends that the policy statement on printed matter is both unconstitutional on its face and as it was applied to him.[4] He contends that the magistrate judge failed to sufficiently consider First Amendment concerns and that the policy statement is neither supported by a significant government interest nor narrowly tailored.[5] In addition to this facial attack, he claims that the policy statement was discriminatorily enforced against him.[6]

■ We review legal conclusions involving First Amendment issues de novo, *Pursley v.*

---

3. The government also introduced into evidence a "Policy Statement for Public Assemblies, Meetings & Picketings" at the Jefferson Memorial, issued under 36 C.F.R. §§ 2.51 and 2.52. Permits are required under 36 C.F.R. § 2.51(a) for public assemblies, meetings, gatherings, demonstrations, parades and other public expressions of views within park areas. As Kistner was convicted only for the sale and distribution of printed matter under 36 C.F.R. § 2.52(a), our review focuses on the policy statement dealing specifically with this activity.

4. Kistner's only challenge to the regulation itself, 36 C.F.R. § 2.52(a), rests on his belief that the time, place, or manner test "effectively repeals the First Amendment." He believes that the government should only be allowed to restrict First Amendment activity if it can show a clear and present danger to public safety, peace, or order. We of course are bound by the test set by the Supreme Court.

5. In his brief, Kistner refers at one point (pg. 12) to the policy statement as an "overly broad and stifling" restriction while arguing that it is not narrowly tailored, but he does not specifically allege that the policy statement (or regulation) should be invalidated for overbreadth. He also does not identify a significant difference between his claim that the policy statement is unconstitutional as applied to his particular activities and a claim that the policy statement is invalid for overbreadth. *See Van Bergen v. State of Minn.*, 59 F.3d 1541, 1549–50 (8th Cir.1995) (statute would not be reviewed for overbreadth because appellant failed to identify a significant difference between his claim that the statute was overbroad and his claim that it was unconstitutional as applied).

6. Kistner presented only a facial challenge to the regulation and policy statement in his memorandum of law to the district court and did not mention discriminatory treatment. Because Kistner was acting pro se (except for a short reply brief) and laid the basis for the latter point in his testimony at trial, we will address it.

*City of Fayetteville, Ark.*, 820 F.2d 951, 953 (8th Cir.1987), but defer to the trial court's findings of fact unless clearly erroneous. *Ambassador Books & Video, Inc. v. City of Little Rock, Arkansas*, 20 F.3d 858, 864 (8th Cir.), *cert. den.*, —— U.S. ——, 115 S.Ct. 186, 130 L.Ed.2d 120 (1994); *Holmberg v. City of Ramsey*, 12 F.3d 140, 142 (8th Cir.1993), *cert. den.*, —— U.S. ——, 115 S.Ct. 59, 130 L.Ed.2d 17 (1994).

## A.

 Written expression in a public park is subject to reasonable time, place, or manner restrictions.[7] *Ward v. Rock Against Racism*, 491 U.S. 781, 789, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989). Restrictions must be content neutral, narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication. *Id.*

 The Constitution does not permit the government to regulate speech because it disagrees with its content or message. *Clark v. Community For Creative Non–Violence*, 468 U.S. 288, 296, 104 S.Ct. 3065, 3070, 82 L.Ed.2d 221 (1984) (Park Service regulation barring camping by demonstrators was content neutral and was not applied because of any disagreement with the message presented). A time, place, or manner regulation is content neutral if the government can justify the restriction without reference to the content of the regulated activity. *Id.* In addition to being facially neutral, a regulation must not place unbridled discretion in the hands of the government officials who enforce it. *Ward*, 491 U.S. at 782–83, 109 S.Ct. at 2755–56 (city regulation of sound from bandshell gave officials discretion only about sound quality and volume, not content of the music).

 The regulation in question lists several content neutral reasons for requiring permits: to avoid overcrowding and overlapping activities, to preserve peace and tranquility, to prevent dangers to public health or safety,

and to minimize damage to park resources and facilities. 36 C.F.R. § 2.52(c)(1)–(5). The policy statement reflects similar concerns for public safety, health, and welfare, as opposed to any restriction on the content of expressive activity.

There is also no indication that officials exercise unbridled discretion in enforcing the policy statement or regulation. The regulation requires that the superintendent "shall" issue a permit on proper application unless it would be contrary to the reasons for the regulation. The permits granted for July 4 that were introduced into evidence prohibited holders from harassing visitors, obstructing park activities, or carrying signs with sticks. These restrictions are consistent with the policy statement's provisions about public safety. As Ranger Carlson testified, wooden sticks attached to signs like those carried by Kistner and his friend potentially endangered the large crowd at the fair. Further, those with permits distributed a wide range of literature, including religious materials. There was no evidence that people were allowed to distribute literature without a permit in violation of the policy statement, or that people had applied for and been denied a permit based on the content of their message.

We thus find unpersuasive Kistner's speculation that the government's discretion under the policy statement creates an unacceptable risk that free speech may be regulated on the basis of content. The record shows to the contrary, for the Park Service granted permits irrespective of content. We conclude that the policy statement and regulation are content neutral.

Restrictions on expressive activity must also be narrowly tailored to serve a significant government interest. *Ward*, 491 U.S. at 789, 109 S.Ct. at 2753. Kistner argues both that the trial court failed to analyze whether the government had a significant interest and that the policy statement is not narrowly tailored. The magistrate judge appropriate-

---

7. Kistner also claims the policy statement is an unreasonable prior restraint. While any permit requirement gives "public officials the power to deny use of a forum in advance of actual expression," *Ward*, 491 U.S. at 783 n. 5, 109 S.Ct. at

2756 n. 5, reasonable time, place, or manner restrictions are a recognized exception to the general prohibition against prior restraints. *Community for Creative Non–Violence v. Turner*, 893 F.2d 1387, 1390 (D.C.Cir.1990).

ly noted, however, that the government's permit scheme serves a substantial interest in preserving national parks in "an attractive and intact" condition. *See Clark*, at 296, 104 S.Ct. at 3070 (government has a substantial interest in maintaining parks in an attractive and intact condition for visitors' use and enjoyment).

◼ Kistner also claims that the federal regulation is "much more reasonable" than the policy statement which therefore exceeds the authority of 36 C.F.R. § 2.52. He points out that the regulation states that permits shall be issued without unreasonable delay, 36 C.F.R. § 2.52(c), but he claims the policy statement requires that applications must be filed two weeks in advance. The policy statement on printed matter only suggests, but does not require, that requests for permits "should be received at least ten (10) working days prior to date needed." This is not inconsistent with the regulation's requirement that permits be issued with no unreasonable delay. It makes administrative sense to seek to obtain applications in advance of large gatherings such as the Veiled Prophet Fair, particularly where numerous applications may need to be processed. The regulation does not spell out what would be "unreasonable," but the record of what actually was done in relation to the fair undercuts Kistner's argument.

◼ Kistner also contends that the regulation allows multiple occupancy of particular areas, but the policy statement does not. The regulation provides that a permit may be denied if the activities covered by a prior permit "do not reasonably allow multiple occupancy of the particular area" or where "the number of persons engaged in the sale or distribution exceeds the number that can reasonably be accommodated in the particular location applied for ..." 36 C.F.R. § 2.52(c)(1), (3). The policy statement on printed matter provides that "[p]ermits are issued so that only one area of the Memorial grounds is being used at any one time for purposes which require a special use permit" and limits permit holders to "no more than six persons distributing or selling printed matter at any given time." Kistner inaccurately interprets this to mean that only six persons can engage in First Amendment activity in the entire park at any one time.

While the policy statement is more narrow, it is complementary to the thrust of the regulation, and the Park Service approved permits on July 4, 1992 which allowed more, not less, First Amendment activity than a restrictive reading of the policy statement might suggest. Individuals and groups of up to seventy people were granted permits to distribute literature throughout the Arch grounds on that day.

Last, Kistner claims that the policy statement unreasonably confines permit holders to five areas within the park. The designation of five areas spread evenly throughout the Arch grounds, however, is consistent with the regulation's mandate to avoid injury and maintain tranquility. 36 C.F.R. § 2.52(e). The Park Service has an interest in being able to control the number of distributors who might approach visitors, endanger their safety, or interfere with park activities. *See Clark*, at 298, 104 S.Ct. at 3072 (the parks department should be able to judge how much protection of park lands is needed). We thus find that the regulation and policy statement are narrowly tailored to serve the government's significant interest in maintaining the safety and attractiveness of park grounds.

The final requirement for a constitutional time, place, or manner regulation in a public park is that it leaves open ample alternative means to communicate the information. *Ward*, 491 U.S. at 802, 109 S.Ct. at 2760. The record shows that individuals can distribute or sell pamphlets without a permit on the adjacent boulevard bordering the Arch grounds. Alternatively, people do not need a permit to speak to others and thereby communicate their messages without passing out pamphlets. Ample alternative means to communicate information thus exist under both the regulation and policy statement.

We therefore conclude that the regulation and policy statement on the sale or distribution of printed matter satisfy the requirements for a reasonable time, place, or manner restriction under the First Amendment.

## B.

Kistner's second challenge concerns whether the policy statement is unconstitutional as applied to him. Kistner stated at trial that the rangers acted to suppress his message, and he now argues that government officials discriminated against him by making him, but not others, comply with the policy statement. Kistner fails to elaborate on which rules were discriminatorily enforced, however, except for his claim that several applicants were granted permits at the fair immediately upon application. In Kistner's view the policy statement requires applications at least two weeks in advance; he says he was told it would take a week to get a permit while others were allowed to get one on the Arch grounds. Kistner suggests that this treatment of him is "an archetype of the discretionary" First Amendment restrictions traditionally held unconstitutional.

The record does not support Kistner's arguments. As previously noted, the policy statement pertaining to the sale and distribution of printed matter only suggests, but does not require, that requests for permits should be received at least ten working days in advance. At trial, Kistner testified that he had asked Ranger Bland if it would take a week to get a permit and that Bland had responded "probably." Tr. at 69. Ranger Carlson did not recall such an exchange. Tr. at 23. The magistrate judge noted that whether the rangers had told Kistner he could obtain a permit that day was a factual dispute involving credibility determinations. Tr. at 83–84. He then made an explicit finding that Kistner had been informed about the opportunity to apply at the Arch grounds. The district court made a similar finding. We have carefully reviewed the transcript and do not see that these findings are clearly erroneous. *See United States v. Ramsey*, 871 F.2d 1365, 1367 (8th Cir.1989).

Further, enforcement of the permit requirement was not based on the subject of Kistner's pamphlets. Kistner suggests that officials had unbridled discretion and enforced the permit policy against him because they disagreed with his message. It is not disputed, however, that Kistner declined to apply for a permit, and there is no evidence that the Park Service denied him a permit or issued the citation because of the content of his pamphlets or signs. The evidence instead indicates that the Park Service granted permits without consideration of content.

We therefore conclude that application of the regulation and policy statement on printed matter to Kistner did not violate the First Amendment.

Accordingly, the judgment of the district court is affirmed.