UNITED STATES of America, Plaintiff-Appellee,

v.

Marvin FRANDSEN, Bryan Morris, Defendants-Appellants.

No. 98-2174.

United States Court of Appeals,

Eleventh Circuit.

May 25, 2000.

Appeals from the United States District Court for the Middle District of Florida.(No. 97-00076-MC-ORL-22), Anne C. Conway, Judge.

Before TJOFLAT and CARNES, Circuit Judges, and GARWOOD[*], Senior Circuit Judge.

CARNES, Circuit Judge:

This appeal presents us with the issue of the constitutionality of a federal regulation, 36 C.F.R. § 2.51 (reprinted in appendix), which requires persons to obtain a permit before making "public expressions of views" in national parks. Marvin Frandsen and Bryan Morris ("defendants") were arrested and convicted for protesting without a permit at the Canaveral National Seashore ("the park"), a national park, in violation of 36 C.F.R. § 1.6. They challenged on its face the constitutionality of 36 C.F.R. § 2.51, which required them to obtain a permit prior to their protest. For the reasons set forth below, we hold that 36 C.F.R. § 2.51 is unconstitutional on its face, and therefore, we reverse the defendant's convictions.

## I. BACKGROUND

Defendants Frandsen and Morris, along with a group of other protestors, were charged with publicly assembling at the park without a permit in violation of 36 C.F.R. § 2.51.[1] The government later amended the

---

[*]Honorable William L. Garwood, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

[1]The defendants were protesting the "discrimination allegedly suffered by Naturist citizens at the hands of Brevard County and the then-current Canaveral National Seashore administration." *See* Frandsen's Brief at 6. A naturist is a person who "advocates a 'clothing optional' lifestyle." *Naturist Soc., Inc. v. Fillyaw,* 958 F.2d 1515, 1517 (11th Cir.1992).

charge to cite as the provision violated, 36 C.F.R. § 1.6(g)(1), which prohibits engaging in an activity requiring a permit without first obtaining the permit.

The defendants consented to their petty offense trial being conducted before a magistrate judge. In response to the charges, the defendants argued that 36 C.F.R. § 2.51, the regulation requiring them to obtain a permit prior to their protest, and 36 C.F.R. § 1.6(g)(1), the regulation prohibiting protesting without a permit, were facially unconstitutional. They argued that the permit scheme violated the First Amendment because it was a prior restraint on free speech, lacked the constitutionally required procedural safeguards, and vested unbridled discretion in the government officials administering it. The government argued that the permit scheme was a valid time, place, or manner restriction on speech.

The magistrate judge concluded that the park was not a public forum because the government had set it aside for recreational activity, and he applied a reasonableness test in evaluating section 2.51. The magistrate judge then held that the permit scheme provided an adequate restriction on the time the superintendent has to decide whether to issue a permit because the regulation provides that, unless the permit should be denied, the superintendent "shall" issue a permit "without unreasonable delay." Alternatively, the magistrate judge held that, if strict scrutiny applied, the permit scheme was facially constitutional, citing *United States v. Kistner,* 68 F.3d 218 (8th Cir.1995) (upholding 36 C.F.R. § 2.52(a)).

After the magistrate judge denied all the motions to dismiss, each of the defendants pleaded guilty, but they reserved the right to appeal from the denial of the motion to dismiss. The magistrate judge sentenced each of the defendants to pay a fine of one dollar, but stayed that sentence pending appeal, and also ordered them to pay a special assessment of ten dollars, which was not stayed. All of the defendants appealed to the district court. Agreeing with the magistrate judge that 36 C.F.R. § 2.51 is not unconstitutional, the district court upheld the convictions.[2] All of the defendants appealed the district court's decision to this Court.

---

[2] Neither the magistrate judge nor the district court ruled on the constitutionality of 36 C.F.R. § 1.6, which prohibits protesting without a permit in violation of 36 C.F.R. § 2.51.

2

Finding that the notices of appeal were not timely, we remanded the case to the district court for a determination of excusable neglect. After the district court found that only Frandsen and Morris had demonstrated excusable neglect, we entered an order that the appeal could proceed only as to those two defendants.

On appeal, Frandsen and Morris contend that their convictions for protesting without a permit in violation of 36 C.F.R. § 1.6 should be overturned, because the regulation requiring them to obtain a permit, 36 C.F.R. § 2.51, is unconstitutional on its face. Their primary contentions are as follows: (1) section 2.51 lacks the procedural safeguards required for a prior restraint on speech, as set forth by the Supreme Court in *Freedman v. Maryland,* 380 U.S. 51, 58-59, 85 S.Ct. 734, 739, 13 L.Ed.2d 649 (1965), and its progeny; (2) section 2.51 is overbroad and not narrowly tailored to serve a compelling government interest because it covers "other public expressions of views;" and (3) section 2.51 grants unbridled discretion to the park superintendent in deciding whether to grant a permit. We find it necessary to address only their first contention.

## II. DISCUSSION

Before we can reach the merits of Frandsen and Morris' appeal, we must determine whether a facial challenge is appropriate for the regulation at issue. A facial challenge, as distinguished from an as-applied challenge, seeks to invalidate a statute or regulation itself. *See Jacobs v. Florida Bar,* 50 F.3d 901, 905-06 (11th Cir.1995). A criminal defendant who is convicted of violating a law may appeal his conviction by challenging the constitutionality of the law on its face. *See Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *Thornhill v. Alabama,* 310 U.S. 88, 97, 60 S.Ct. 736, 742, 84 L.Ed. 1093 (1940) (explaining in the First Amendment context that "[o]ne who might have had a license for the asking may ... call into question the whole scheme of licensing when he is prosecuted for failure to procure it"); *United States v. Acheson,* 195 F.3d 645, 648-50 (11th Cir.1999). This is true even if the defendant pleaded guilty to violating the law. *See United States v. Cunningham,* 161 F.3d 1343, 1344 (11th

3

Cir.1998). "[W]hen a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." *City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 755-56, 108 S.Ct. 2138, 2143, 100 L.Ed.2d 771 (1988). The remedy if the facial challenge is successful is the striking down of the regulation and the reversal of the conviction. *See Stromberg v. California,* 283 U.S. 359, 369-70, 51 S.Ct. 532, 536, 75 L.Ed. 1117 (1931) ("The ... statute being invalid on its face, the conviction of the appellant ... must be set aside.").

The general rule in this circuit is that for "[a] facial challenge to be successful, [a plaintiff] 'must establish that no set of circumstances exists under which the [law] would be valid.' " *Adler v. Duval County School Board,* 206 F.3d 1070, 1083-84 (11th Cir.2000) (en banc) (quoting *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987)); *see also Jacobs,* 50 F.3d at 906 n. 20 ("[w]hen a plaintiff attacks a law facially, the plaintiff bears the burden of proving that the law could never be constitutionally applied.").[3] Some circuits have determined that a facial challenge to a prior restraint on

---

[3]This rule, known as "the *Salerno* rule," has been subject to a heated debate in the Supreme Court, where it has not been consistently followed. *See City of Chicago v. Morales,* 527 U.S. 41, 55 n. 22, 119 S.Ct. 1849, 1858-59 n. 22, 144 L.Ed.2d 67 (1999) (plurality opinion) (Stevens, J., Souter, J., and Ginsburg, J.) ("To the extent we have consistently articulated a clear standard for facial challenges, it is not the *Salerno* formulation, which has never been the decisive factor in any decision of this Court...."); *Morales,* 527 U.S. at 79-80 & n. 2, 119 S.Ct. at 1870-71 & n. 2 (Scalia, J. dissenting) ("As *Salerno* noted, ... the overbreadth doctrine is a specialized exception to the general rule for facial challenges, justified in light of the risk that an overbroad statute will chill free expression.... I am aware, of course, that in some recent facial-challenge cases the Court has, without any attempt at explanation, created entirely irrational exceptions to the 'unconstitutional in every conceivable application' rule, when the statutes at issue concerned hot-button social issues on which 'informed opinion' was zealously united.") (citations omitted); *Washington v. Glucksberg,* 521 U.S. 702, 740, 117 S.Ct. 2302, 2304-05, 138 L.Ed.2d 772 (1997) (Stevens, J. concurring) ("I do not believe the Court has ever actually applied such a strict standard, even in *Salerno* itself, and the Court does not appear to apply *Salerno* here."); *Janklow v. Planned Parenthood, Sioux Falls Clinic,* 517 U.S. 1174,1175-1176, 116 S.Ct. 1582, 1583, 134 L.Ed.2d 679 (1996) (Memorandum opinion by Stevens, J. denying cert.) ("[T]he dicta in *Salerno* does not accurately characterize the standard for deciding facial challenges, and neither accurately reflects the Court's practice with respect to facial challenges, nor is it consistent with a wide array of legal principles.") (quotation marks and citation omitted); *Janklow,* 517 U.S. at 1178, 116 S.Ct. at 1584 (Scalia, J. dissenting) (explaining that the question of when the *Salerno* rule applies "cries out for our review"); *Planned Parenthood of Southeastern Pennsylvania v. Casey,* 505 U.S. 833, 942, 112 S.Ct.

4

speech for want of certain procedural safeguards satisfies that general rule. "A form of unbridled discretion is the failure to place brief, specific time limits on the decision-making process. The rationale for permitting a facial challenge is that when a licensing scheme allegedly contains a risk of delay, 'every application of the statute create[s] an impermissible risk of suppression of ideas.' " *Nightclubs, Inc. v. City of Paducah,* 202 F.3d 884, 889 (6th Cir.2000) (internal quotation marks and citations omitted) (quoting *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 223-24, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (plurality opinion)); *see also Baby Tam & Co., Inc. v. City of Las Vegas,* 154 F.3d 1097, 1100 (9th Cir.1998) ("A facial challenge is also appropriate when there is a lack of adequate procedural safeguards necessary to ensure against undue suppression of protected speech.") (citation omitted).

Whatever the precise scope of the general rule may be, the Supreme Court and this Court consistently have permitted facial challenges to prior restraints on speech without requiring the plaintiff to show that there are no conceivable set of facts where the application of the particular government regulation might or would

---

2791, 2854, 120 L.Ed.2d 674 (1992) (Blackmun, J. concurring in part, dissenting in part) ("[Chief Justice Rehnquist in a dissenting opinion] then further weakens the test [for a facial challenge] by providing an insurmountable requirement for facial challenges: Petitioners must 'show that no set of circumstances exist under which the [provision] would be valid.' "); *Casey,* 505 U.S. at 972, 112 S.Ct. at 2870 (Rehnquist, C.J. dissenting) ("[B]ecause this is a facial challenge to the Act, it is insufficient for petitioners to show that the notification provision 'might operate unconstitutionally under some conceivable circumstances.' "); *see also Florida League of Professional Lobbyists, Inc. v. Meggs,* 87 F.3d 457, 459 (11th Cir.1996) (discussing disagreement among the Supreme Court Justices concerning "how high the threshold for facial invalidation should be set"); Michael C. Dorf, *Facial Challenges to State and Federal Statutes,* 46 Stan. L.Rev. 235 (1994).

An exception to that general rule "permit[s] a party to challenge an ordinance under the overbreadth doctrine in cases where every application creates an impermissible risk of suppression of ideas, such as an ordinance that delegates overly broad discretion to the decisionmaker, and in cases where the ordinance sweeps too broadly, penalizing a substantial amount of speech that is constitutionally protected" even if "application in the case under consideration may be constitutionally unobjectionable." *Forsyth County v. Nationalist Movement,* 505 U.S. 123, 129, 112 S.Ct. 2395, 2401, 120 L.Ed.2d 101 (1992) (citations omitted); *see also Morales,* 527 U.S. at 79 n. 2, 119 S.Ct. at 1870 n. 2 (Scalia, J. dissenting) ("As *Salerno* noted, ... the overbreadth doctrine is a specialized exception to the general rule for facial challenges, justified in light of the risk that an overbroad statute will chill free expression.") (citation omitted).

be constitutional. *See, e.g., Plain Dealer,* 486 U.S. at 755-56, 108 S.Ct. at 2143; *FW/PBS,* 493 U.S. at 225, 110 S.Ct. at 604; *Freedman,* 380 U.S. at 58-60, 85 S.Ct. at 738-40; *Boss Capital, Inc. v. City of Casselberry,* 187 F.3d 1251 (11th Cir.1999); *Lady J. Lingerie, Inc. v. City of Jacksonville,* 176 F.3d 1358 (11th Cir.1999); *Redner v. Dean,* 29 F.3d 1495 (11th Cir.1994); *cf. Abramson v. Gonzalez,* 949 F.2d 1567, 1573 (11th Cir.1992) (explaining that a facial challenge is proper because the regulation "affects the enjoyment of freedoms which the Constitution guarantees and subjects the exercise of First Amendment freedoms to licensing requirements") (internal citations and quotation marks omitted). Because Frandsen and Morris challenge the permit regulation, which is a prior restraint on speech, on grounds that it fails to provide constitutionally required procedural safeguards, the general rule set forth in *Adler* does not apply to their facial challenge.

A prior restraint on expression exists when the government can deny access to a forum for expression before the expression occurs. *See Ward v. Rock Against Racism,* 491 U.S. 781, 795 n. 5, 109 S.Ct. 2746, 2756 n. 5, 105 L.Ed.2d 661 (1989) (holding that a regulation was not a prior restraint because it did not authorize suppression of speech in advance of its expression). The regulation presently at issue clearly constitutes a prior restraint on expression. Under 36 C.F.R. § 2.51, the National Park Service allows "[p]ublic assemblies, meetings, gatherings, demonstrations, parades, and other public expressions of views" at the Canaveral National Seashore and other national parks only if the park superintendent issues a permit in advance of the activity. *See* 36 C.F.R. § 2.51(a). Because the superintendent can deny the use of the park for expression by denying a permit, section 2.51 is a prior restraint on expression. *See Ward,* 491 U.S. at 795 n. 5, 109 S.Ct. at 2756 n. 5. Although prior restraints are not *per se* unconstitutional, there is a strong presumption against their constitutionality. *See FW/PBS,* 493 U.S. at 225, 110 S.Ct. at 604 (O'Connor, J.) (plurality opinion).

A. DOES SECTION 2.51 APPLY TO PUBLIC FORA ?

When a regulation restricts the use of government property as a forum for expression, an initial step in analyzing whether the regulation is unconstitutional is determining the nature of the government property involved. *See United States v. Kokinda,* 497 U.S. 720, 726-27, 110 S.Ct. 3115, 3119-20, 111 L.Ed.2d 571 (1990). The nature of the property determines the level of constitutional scrutiny applied to the restrictions on expression. *See Capitol Square Review & Advisory Bd. v. Pinette,* 515 U.S. 753, 761, 115 S.Ct. 2440, 2446, 132 L.Ed.2d 650 (1995). The Supreme Court has delineated three categories of government-owned property for purposes of the First Amendment: the traditional public forum, the designated public forum, and the nonpublic forum. *See Crowder v. Housing Auth. of Atlanta,* 990 F.2d 586, 590 (11th Cir.1993). Streets and parks are the quintessential traditional public fora, because those areas " 'have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.' " *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948, 954-55, 74 L.Ed.2d 794 (1983) (quoting *Hague v. Committee for Indus. Org.,* 307 U.S. 496, 515, 59 S.Ct. 954, 963, 83 L.Ed. 1423 (1939)); *see also United States v. Grace,* 461 U.S. 171, 177, 103 S.Ct. 1702, 1706-07, 75 L.Ed.2d 736 (1983) ("[P]ublic places historically associated with the free exercise of expressive activities, such as ... parks, are considered without more, to be public forums.").

Section 2.51 applies to national parks, which the government concedes are traditional public fora. The district court erred in determining that the national park involved in this case is a nonpublic forum, and

in turn, erred by applying a rational basis test to section 2.51.[4]  Restrictions on expression in traditional public

fora receive heightened scrutiny.  *See Kokinda,* 497 U.S. at 726-27, 110 S.Ct. at 3119-20.

In public fora, the government may regulate the time, place, and manner of expression so long as

the restrictions "are content-neutral, are narrowly tailored to serve a significant government interest, and leave

open ample alternative channels of communication."  *Grace,* at 461 U.S. at 177, 103 S.Ct. at 1707 (internal

quotation marks and citations omitted).  Moreover, a regulation constituting a prior restraint on expression

must also contain certain procedural safeguards as set forth in *Freedman v. Maryland,* 380 U.S. 51, 59, 85

S.Ct. 734, 739, 13 L.Ed.2d 649 (1965).  *See Forsyth County v. Nationalist Movement,* 505 U.S. 123, 130, 112

S.Ct. 2395, 2401, 120 L.Ed.2d 101 (1992);  *Lady J. Lingerie,* 176 F.3d at 1364-65.[5]  Because we conclude

---

[4]Our decision in *Naturist Society, Inc. v. Fillyaw,* 958 F.2d 1515 (11th Cir.1992), confirms that
national parks are public fora.  In *Fillyaw,* we reversed the district court's determination that a state
government preserve with a beach was a nonpublic forum and held that the government facility was a
park with qualities of a traditional public forum.  *See id.* at 1522.  The state park in *Fillyaw* is almost
identical to the national park in this case.  Both the national park here and the state park in *Fillyaw* are
open to the general public and consist of beaches, sidewalks, and parking areas.  Particularly applicable to
the present case, we explained in *Fillyaw:*

> [T]he park is more than a beach.  In particular, it contains parking lots, a nature center,
> and walkways.  Speech and expressive conduct in these areas may not post the same evils
> as on the beach.  In declaring the park a non-public forum based solely upon its beach
> characteristics, the district court ignored other areas of the park which are not beach.

*Id.* (citation omitted).

[5]Although the procedural protections were developed in the context of sexually explicit material, they
apply with the same or even greater force in the context of prior restraints of political speech.  As Justice
Harlan wrote:

> The right to assemble peaceably to voice political protest is at least as basic as the right to
> exhibit a motion picture which may have some aesthetic value.  Moreover, slow-moving
> procedures have a much more severe impact [on political speech] than they had in
> *Freedman* ... [as] timing is of the essence in politics.

*Shuttlesworth v. Birmingham,* 394 U.S. 147, 162-63, 89 S.Ct. 935, 944-45, 22 L.Ed.2d 162
(1969) (overturning convictions of marchers who demonstrated in violation of an unconstitutional
permit ordinance) (Harlan, J. concurring).

that section 2.51 lacks one of the procedural safeguards required under *Freedman,* we do not address whether the regulation is a permissible time, place, or manner restriction.

## B. IS 36 C.F.R. § 2.51 A CONSTITUTIONAL PRIOR RESTRAINT ON EXPRESSION?

The Supreme Court in *Freedman* outlined three procedural safeguards that a prior restraint on protected expression must contain to obviate the dangers of censorship: (1) the burden of going to court to suppress the speech, and the burden of proof once in court, must rest with the government; (2) any restraint prior to a judicial determination may only be for a specified brief time period in order to preserve the status quo; and (3) an avenue for prompt judicial review of the censor's decision must be available. *Freedman,* 380 U.S. at 58-59, 85 S.Ct. at 739.[6] At least some of the *Freedman* requirements apply to content-neutral regulations such as section 2.51. *See FW/PBS,* 493 U.S. at 226-29, 110 S.Ct. at 605-06 (O'Connor, J., plurality opinion) (holding content-neutral licensing scheme was an unconstitutional prior restraint because it violated the second *Freedman* safeguard—adequate limits on the time that the decisionmaker has to issue the license); *see also id.* at 238-39, 110 S.Ct. at 611 (Brennan, J., concurring) (agreeing with the plurality opinion's requirement of the first two *Freedman* safeguards); *Riley v. National Federation of the Blind of N.C., Inc.,* 487 U.S. 781, 802 & n. 14, 108 S.Ct. 2667, 2680-81 & n. 14, 101 L.Ed.2d 669 (1988) (holding that a content-neutral law requiring professional fundraisers to obtain a license before soliciting donations was subject to the procedural safeguards of *Freedman* ).[7] In *FW/PBS,* the Supreme Court explained that the

---

[6]In subsequent decisions, the Supreme Court has not required all three safeguards in every situation. For example, in *FW/PBS,* a plurality of the Court concluded that the first of the *Freedman* procedural safeguards is not necessary in a licensing scheme which regulates an entire business, as opposed to a scheme like *Freedman* itself which involved the direct censorship of particular expressive material. The Court did require the second and third safeguards to be present. *See FW/PBS,* 493 U.S. at 229-30, 110 S.Ct. at 606-07.

[7]Despite a contrary implication by the Supreme Court in *Cox v. New Hampshire,* 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941), a regulation is not exempt from the *Freedman* safeguards merely because it meets the requirements for a valid time, place, or manner restriction. In *Cox,* the defendants challenged their convictions for taking part in a parade on public streets without a license. *See id.* at 573, 61 S.Ct. at 764. The New Hampshire Supreme Court had construed the scheme to require the licensing board to issue a permit if an investigation revealed that the convenience of the public in using the streets

9

second *Freedman* requirement—any restraint prior to a judicial determination may only be for a specified brief time period in order to preserve the status quo—means that "the licensor must make the decision whether to issue the license within a *specified* and reasonable time period during which the status quo is maintained...." *FW/PBS,* 493 U.S. at 228, 110 S.Ct. at 606 (emphasis added).  The Court reasoned that:

> The failure to confine the time within which the licensor must make a decision contains the same vice as a statute delegating excessive administrative discretion.  Where the licensor has unlimited time within which to issue a license, the risk of arbitrary suppression is as great as the provision of unbridled discretion.

*Id.* at 226-27, 110 S.Ct. at 605 (internal quotation marks and citations omitted).  We applied the time requirement in *Redner v. Dean,* 29 F.3d 1495 (11th Cir.1994), and *Lady J. Lingerie, Inc. v. City of Jacksonville,* 176 F.3d 1358 (11th Cir.1999).  The *Redner* case involved the constitutionality of an ordinance that placed a forty-five day time limit on the administrator's decision to grant or deny a license.  *See Redner,* 29 F.3d at 1500.  In the event the administrator exceeded the forty-five day time limit, the ordinance stated that "the applicant may be permitted to begin operating the establishment for which a license is sought, unless and until the County Administrator notifies the applicant of a denial of the application." *See id.* at 1500-01

---

would not be disturbed, and to permit the licensing board to provide for conditions or changes in time, place, and manner so as to avoid disturbance. *See id.* at 576, 61 S.Ct. at 766.  The Supreme Court affirmed the defendants' convictions, stating that the city had the authority "to give consideration, without unfair discrimination, to time, place and manner in relation to the other proper uses of the streets." *Id.* The defendants did not raise nor did the Court discuss the issue addressed twenty-four years later in *Freedman*—whether a prior restraint on expression must contain certain procedural safeguards to be constitutional.

The Supreme Court has read *Cox* as standing only for the proposition that the government may impose a permit requirement on those wishing to hold marches or parades. *See Forsyth County v. Nationalist Movement,* 505 U.S. 123, 130, 112 S.Ct. 2395, 2401, 120 L.Ed.2d 101 (1992).  More recently, the Court indicated that *Cox* does not stand for the proposition that as long as a regulation is a valid time, place, or manner restrictions, it need not provide the *Freedman* procedural safeguards. *See Riley v. National Federation of the Blind of N.C., Inc.,* 487 U.S. at 802, 108 S.Ct. at 2680 (citing *Cox* for the proposition that states may impose valid time, place, or manner restrictions, and then holding that even an otherwise valid license scheme must provide at least some of the *Freedman* safeguards).  As previously noted, a prior restraint on expression in a traditional public forum must be both a content-neutral, reasonable time, place, or manner restriction *and* provide adequate procedural safeguards to avoid unconstitutional censorship. *See Forsyth County,* 505 U.S. at 130, 112 S.Ct. at 2401.

10

(citation omitted). We held that the ordinance was unconstitutional on its face because its use of the word "may" rather than "shall" allowed the individuals responsible for enforcing the ordinance to suppress the protected expression for an indefinite time period prior to any action on their part or any judicial determination. *See id.* 1501 (holding also that the ordinance failed to provide for prompt judicial review).

In *Lady J. Lingerie,* we examined the constitutionality of a city ordinance that required the zoning board to hold a public hearing within sixty-three days after a business applied for an exception to a zoning regulation but did not require a decision from the board during that time period or any time thereafter. *See Lady J. Lingerie,* 176 F.3d at 1363. As we put it, "the ordinance fails to put any real time limits on the zoning board." *Id.* We held that the ordinance's failure to require a specific deadline for a decision rendered it unconstitutional because it vested too much discretion in the zoning board as to when a decision would be made. *See id.*

Although the permit scheme here requires the superintendent to issue a permit "without unreasonable delay," 36 C.F.R. § 2.51(c), it does not provide the superintendent, the public, or any reviewing court, with any guidance as to what is considered "unreasonable." Like the ordinance in *Lady J. Lingerie,* this regulation "fails to put any real time limits on the [decision maker]." *Lady J. Lingerie,* 176 F.3d at 1363. A park superintendent could receive a permit request well in advance of a planned political demonstration and then fail to act on the permit request until after the date of the demonstration, deciding on his own that he was acting "without unreasonable delay." A park superintendent who does not agree with the political message to be espoused could allow the permit request to sit on his desk for an indefinite period of time—resulting in speech being silenced by inaction. *See Lady J. Lingerie,* 176 F.3d at 1361 ("An ordinance that permits public officials to effectively deny an application by sitting on it indefinitely is also invalid."); *Redner,* 29 F.3d at 1501 (explaining that "[w]e cannot depend on the individuals responsible for enforcing [a regulation] to do so in a manner that cures it of constitutional infirmities" and concluding that the law "risks the suppression of protected expression for an indefinite time period prior to any action"). The defect here is the

11

same as that in *FW/PBS:* "[t]he failure to confine the time within which the licensor must make a decision...."

*FW/PBS,* 493 U.S. at 226-27, 110 S.Ct. at 605.[8]

We hold that a regulation that merely requires a permit to be issued "without unreasonable delay" without more is unconstitutional, because it fails adequately to confine the time within which the decision maker must act. Because 36 C.F.R. § 2.51 is constitutionally invalid for that reason, the convictions of Frandsen and Morris for failing to obtain a permit under section 2.51 cannot stand. We need not reach the other issues they raise concerning section 2.51.

### III. CONCLUSION

The convictions of Frandsen and Morris are REVERSED.

### APPENDIX

36 C.F.R. § 2.51 states:

(a) Public assemblies, meetings, gatherings, demonstrations, parades and other public expressions of views are allowed within park areas, provided a permit therefor has been issued by the superintendent.

(b) An application for such a permit shall set forth the name of the applicant; the date, time, duration, nature and place of the proposed event; an estimate of the number of persons expected to attend; a statement of equipment and facilities to be used and any other information required by the permit application form.

(c) The superintendent shall, without unreasonable delay, issue a permit on proper application unless:

(1) A prior application for a permit for the same time and place has been made that has been or will be granted and the activities authorized by that permit do not rea`

APPENDIX—continued

---

[8]Relying on *United States v. Kistner,* 68 F.3d 218 (8th Cir.1995), the district court concluded that section 2.51 would satisfy a facial challenge to its constitutionality. That reliance on *Kistner* was misplaced for several reasons. First, the *Kistner* Court merely addressed a policy statement interpreting 36 C.F.R. § 2.52, which requires a permit for the distribution of printed material within national parks. *See Kistner,* 68 F.3d at 220. The court limited its review to the constitutionality of the policy statement and declined to review 36 C.F.R. § 2.51. *See id.* at 220 & n. 3. Second, to the extent that the *Kistner* Court suggested that so long as a prior restraint is a reasonable time, place and manner restriction it need not contain the *Freedman* safeguards, that suggestion is inconsistent with *Forsyth County,* 505 U.S. at 130, 112 S.Ct. at 2401.

sonably allow multiple occupancy of that particular area; or

(2) It reasonably appears that the event will present a clear and present danger to the public health or safety; or

(3) The event is of such nature or duration that it cannot reasonably be accommodated in the particular location applied for, considering such things as damage to park resources or facilities, impairment of a protected area's atmosphere of peace and tranquility, interference with program activities, or impairment of public use facilities.

(d) If a permit is denied, the applicant shall be so informed in writing, with the reason(s) for the denial set forth.

(e) The superintendent shall designate on a map, that shall be available in the office of the superintendent, the locations available for public assemblies. Locations may be designated as not available only if such activities would:

(1) Cause injury or damage to park resources; or

(2) Unreasonably impair the atmosphere of peace and tranquility maintained in wilderness, natural, historic or commemorative zones; or

(3) Unreasonably interfere with interpretive, visitor service, or other program activities, or with the administrative activities of the National Park Service; or

(4) Substantially impair the operation of public use facilities or services of National Park Service concessioners or contractors; or

APPENDIX—continued


(5) Present a clear and present danger to the public health and safety.

(f) The permit may contain such conditions as are reasonably consistent with protection and use of the park area for the purposes for which it is established. It may also contain reasonable limitations on the equipment used and the time and area within which the event is allowed.

(g) No permit shall be issued for a period in excess of 7 days, provided that permits may be extended for like periods, upon a new application, unless another applicant has requested use of the same location and multiple occupancy of that location is not reasonably possible.

(h) It is prohibited for persons engaged in activities covered under this section to obstruct or impede pedestrians or vehicles,

APPENDIX—continued

13

or harass park visitors with physical contact.

(i) A permit may be revoked under any of those conditions, as listed in paragraph (c) of this section, that constitute grounds for denial of a permit, or for violation of the terms and conditions of the permit. Such a revocation shall be made in writing, with the reason(s) for revocation clearly set forth, except under emergency circumstances, when an immediate verbal revocation or suspension may be made to be followed by written confirmation within 72 hours.

(j) Violation of the terms and conditions of a permit issued in accordance with this section may result in the suspension or revocation of the permit.

36 C.F.R. § 2.51