[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-13813

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 22, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00184-CV-FTM-29-SPC

MICHELLE HEINKEL,
by and through her parent and next friend Debra Heinkel,
NATE CORDRAY,

Plaintiffs-Appellants,

versus

SCHOOL BOARD OF LEE COUNTY, FLORIDA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(August 22, 2006)**

Before BLACK, BARKETT and COX, Circuit Judges.

PER CURIAM:

Michelle Heinkel and Nate Cordray brought this action against the School Board of Lee County ("the School Board") seeking declaratory relief, injunctive relief, and damages for the School Board's alleged violation of Plaintiffs' constitutional rights. Specifically, Plaintiffs alleged that the School Board maintains a facially unconstitutional policy regarding distribution of written materials to students ("the Policy") and that the Policy had been unconstitutionally applied to deny them their rights to free speech, free exercise of religion, freedom from establishment of religion, and equal protection. The district court dismissed Cordray's claims for lack of standing and granted summary judgment for the School Board on Heinkel's claims. Plaintiffs appeal the judgment only as to their First Amendment speech claims, arguing: (1) Cordray has standing to challenge the Policy, (2) the Policy is a facially unconstitutional prior restraint on speech, and (3) the Policy was unconstitutionally applied to bar their speech. We affirm in part and reverse in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In early April 2003, Freedom to Learn, a non-profit organization, informed the School Board that students in its schools intended to commemorate The Day of Remembrance at school on April 11, 2003. (R.1-26 ¶¶ 12, 27, 34.) The Day of Remembrance is a day "set aside to remember the 40 million children who have been

2

lost to elective abortion and to remember the pain experienced by women who have had an abortion." (R.1-26 ¶ 11.) Freedom to Learn stated that students in the Lee County schools intended to distribute written materials at school. (R.1-26 ¶¶ 31-34.) In response, the School Board informed Freedom to Learn that the School Board had a written policy governing distribution of written materials on school properties and provided Freedom to Learn with a copy of that policy.[1] (R.1-26 ¶¶ 35, 39.) On April

---

[1]The Policy identified is School District of Lee County Administrative Regulation 3.15, entitled "Advertising." (R.1-26 Ex. B.) It states, in pertinent part:

> (4) Advertisement Through the Distribution of Handouts
>     (a) Any entity requesting handouts be distributed to students at a District school shall submit the handout to the Superintendent or his/her designee for consideration.
>     (b) The Superintendent or his/her designee shall apply the standards in paragraph (1)(a) when considering approval.

Paragraph (1)(a) states:

> The Principal of each school is given authority to approve advertising on the school campus in the form of signs or other displays containing the company or organization name. The Principal is also given authority to approve use of the school campus or a portion thereof as part of an advertisement. Principal will give approval for such advertising only when such results in the school receiving funds or property from the advertiser.

Lee County Superintendent of Schools James W. Browder testified that, despite the statement in Paragraph 4, Paragraph (1)(a) does not provide all the applicable standards for his consideration of handouts. He understands that he is to apply the standards in Paragraph (1)(b). (Browder Dep. at 15-16.) Paragraph (1)(b) of the Policy states:

> The Principal shall apply the following standards in deciding whether to approve advertising.
>     1. No advertisements may be obscene or promote products or services, which minors may not legally purchase or use.

3

10, 2003, pursuant to the Policy, Freedom to Learn gave Lee County Superintendent of School James W. Browder a copy of the materials it claimed students wished to distribute. (R.1-26 ¶ 45.) Later that same day, Browder denied Freedom to Learn's request to distribute the written materials, explaining that the literature would "tend to create a substantial disruption in the school environment." (R.1-26 Ex. C.)

On January 29, 2004, Browder sent a letter to Freedom to Learn asking that any request to distribute materials on the 2004 Day of Remembrance be made at least one week in advance of the desired distribution date. (R.1-26 Ex. F.) No such request was made.

During the 2003-2004 school year, Heinkel was a seventh grader at Cypress Lake Middle School, a Lee County school that includes sixth through eighth grades. (R.1-26 ¶ 7.) Cordray was a twelfth grader at Riverdale High School, a Lee County

---

2. No advertisements may contain libelous material.
3. No advertisement shall include political, religious or organizational symbols and shall be non-proselytizing.
4. No advertisement may be approved which would tend to create a substantial disruption in the school environment.

While the written Policy appears to apply only to commercial speech and not to student distribution of non-commercial materials, the School Board maintains that it applies to all distributions of written materials on school property. (Browder Dep. at 8-10, 18, 25.) Therefore, for purposes of this lawsuit, the Policy includes the School Board's unwritten rule that the Policy, including the standards in Paragraph (1)(b), extends to all distributions of written materials on school property.

4

school that includes ninth through twelfth grades.[2] (R.1-26 ¶ 19.) To observe the 2004 Day of Remembrance, Heinkel wished to wear a Day of Remembrance t-shirt,[3] take a vow of silence during non-instructional time, and distribute materials about abortion and abortion alternatives to her classmates during non-instructional time. (R.1-26 ¶¶ 32, 33.)

Though neither Heinkel nor any other student had made a request to distribute written materials on the Day of Remembrance, Heinkel filed this lawsuit, through her mother, on March 26, 2004. In the complaint, she alleged that the School Board's application of the Policy had denied her the opportunity to distribute pro-life literature on the Day of Remembrance in 2003 and she sought an injunction forbidding the School Board from applying the Policy to deny her that opportunity again in 2004.

After the district court denied Heinkel's request for an injunction on April 14, Heinkel faxed two letters to Browder, on April 14 and 15, requesting permission to distribute specific pieces of pro-life literature on April 16, 2004, the 2004 Day of Remembrance. (R.1-26, Ex. G.) On April 15, Heinkel's attorney also faxed Browder

---

[2]Cordray withdrew from Riverdale High School during the pendency of this lawsuit in the district court. He is no longer a student in any Lee County school. (R.2-71 at 9.)

[3] The front of the t-shirt says: "Day of Remembrance, 45 Million lost to abortion since 1973, Remembering in silence." The back says: "We give a voice to those who cannot speak. We stand for those who never could. We remember the 1/3 of our generation lost." (R.2-53.)

5

a letter reiterating Heinkel's request and stating, "We are also requesting on behalf of a high school student to distribute the same literature." (R.1-26, Ex. H.) That same day, Browder denied Heinkel's request to distribute the materials at her middle school, stating in a reply letter that, pursuant to the Policy, he had reviewed the literature and that he had determined that distribution of "the documents would tend to create a substantial disruption in the school environment." (R.1-26, Ex. I.) Browder did not address distribution of the materials in a high school, nor did he prohibit any students from wearing the Day of Remembrance t-shirt.

On April 16, Heinkel filed a pleading styled "Verified Amended Complaint for Declaratory Judgment, Preliminary and Permanent Injunctive Relief and Damages," in which Cordray was added as a plaintiff and factual allegations regarding events subsequent to March 26, 2004, were made.[4] (R.1-26.) Subsequently, the parties filed cross-motions for summary judgment. The district court granted the School Board's

---

[4]Because this pleading sets forth facts occurring after the original complaint was filed, it is a supplemental complaint, the filing of which requires leave of the district court. Fed. R. Civ. P. 15(d). In this case, no motion for leave to file the supplemental pleading was made, and no leave was granted. However, the School Board made no objection to the supplemental complaint. The parties fully litigated the issues presented in the supplemental complaint in their cross-motions for summary judgment. And the district court granted judgment for the School Board after considering these motions. Thus, while the claims premised on facts alleged solely in the supplemental complaint were not properly before the district court, they appear to have been "tried by express or implied consent of the parties," *see* Fed. R. Civ. P. 15(b), and therefore will be reviewed by this court.

6

motion, holding that Cordray lacks standing to maintain the suit and that Heinkel's challenges fail as a matter of law. (R.2-71.)

## II. STANDARDS OF REVIEW

"We review the district court's grant of summary judgment *de novo*, applying the same legal standard as the district court. Reviewing the record evidence in the light most favorable to appellant, we must determine if there are any genuine issues of material fact that preclude judgment as a matter of law." *Coleman v. Miller*, 117 F.3d 527, 529 (11th Cir. 1997) (citation omitted). We review the factual findings of the district court for clear error. Fed. R. Civ. P. 52(a).

## III. DISCUSSION

### A. Standing

The district court dismissed Cordray because it held that he lacked standing to maintain a lawsuit against the School Board. The district court supported this holding with a factual finding that there is no evidence that Cordray actually sought permission to distribute the literature. That finding is not clearly erroneous; indeed, it is supported by the record. In arguing that he suffered injury-in-fact, Cordray relies on a April 14, 2004 letter from Freedom to Learn to Browder, which states, "We are also requesting on behalf of a high school student to distribute the same literature on the Day of Remembrance, April 16, 2004." (R.1-26, Ex. H.) Cordray contends that

7

he was that high school student. There is no evidence in the record, however, supporting this bare assertion. And, because the record contains no evidence that the School Board actually applied the Policy to deny Cordray the ability to distribute materials, Cordray lacks standing to bring an as-applied challenge to the School Board's actions.

Cordray also lacks standing to bring a facial challenge to the Policy. A plaintiff who poses a facial challenge to a policy restraining speech need not actually have the policy applied to him. *City of Lakewood v. Plain Dealer Publ. Co.*, 486 U.S. 750, 755-56, 108 S. Ct. 2138, 2142-43 (1988); *United States v. Frandsen*, 212 F.3d 1231, 1235 (11th Cir. 2000). But, he must be within the class of persons to whom the restraint applies. *Frandsen,* 212 F.3d at 1235; *see also White's Place, Inc. v. Glover*, 222 F.3d 1327, 1329 (11th Cir. 2000) ("'A court can be most certain that a constitutional challenge grows out of a genuine dispute where the allegedly unconstitutional statute interferes with the way the plaintiff would normally conduct his or her affairs.'") (quoting *Leverett v. City of Pinellas Park*, 775 F.2d 1536, 1539 (11th Cir. 1985)). Here, the Policy applies to all persons having a desire to distribute written materials to students in Lee County schools. (Browder Dep. at 18, 25.) The record contains nothing to indicate that Cordray maintains such a desire subsequent to his withdrawal from Lee County schools. Thus, there is nothing to indicate that

8

Cordray is a member of the class of persons with standing to pose a facial challenge to the Policy.

We therefore affirm the district court's dismissal of Cordray as a plaintiff in this lawsuit. Heinkel's standing is undisputed. We proceed with an analysis of her claims.

## B. The Facial Challenge

Heinkel alleges that the Policy is facially unconstitutional. Addressing this argument in its summary judgment order, the district court recognized that the Policy is content-based and that it lacks safeguards to guide and restrain the discretion of the School Board in determining whether and which written materials may be distributed. The district court described the lack of safeguards as "troublesome." (R.2-71 at 14.) We agree.

"There is nothing unconstitutional per se in a requirement that students submit materials to the school administration prior to distribution." *Shanley v. Northeast Indep. Sch. Dist.*, 462 F.2d 960, 969 (5th Cir. 1972).[5] But the policy at issue in this case is a prior restraint on speech that is unconstitutional. *Frandsen*, 212 F.3d at 1236-37 ("A prior restraint on expression exists when the government can deny

---

[5]In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the Fifth Circuit handed down prior to close of business on September 30, 1981.

9

access to a forum for expression before the expression occurs.") (citation omitted).

The Policy's prohibition of all religious and political symbols is a content-based restriction unsupported by a reasonable belief of the School Board that all such expression would create substantial disruption in the Lee County schools. *Shanley*, 462 F.2d at 970 (holding that presumably protected student speech cannot be prohibited by the school unless there are "facts which might reasonably have led school authorities to forecast substantial disruption of or material interference with school activities") (quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 514, 89 S. Ct. 733, 740 (1969)). Also, the Policy contains no time limits within which the School Board must act to grant or deny a request to distribute documents.[6] Thus, it presents significant risks of arbitrary censorship. *See Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1270-71 (11th Cir. 2005) (holding content-based prior restraints must ensure that decisions are made within a specified time period); *Frandsen*, 212 F.3d at 1239 (holding that a prior restraint that fails to limit time in which decision maker must act presents the risk of arbitrary suppression and is

[6]In response to a Suggestion of Mootness issued by this court after oral argument, the School Board provided a copy of the Policy, as amended August 23, 2005, which now states that "The Superintendent or his/her designee shall respond to the request within seven (7) calendar days." Amended Policy 3.15(4)(b). While the revised Policy now sets a time limit on the Superintendent's response to a request, it still "'fails to put any real time limits on the [decision maker]'" as to when a yes or no decision must be made as to whether the distribution will be allowed. *Frandsen*, 212 F.3d at 1240 (quoting *Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358, 1363 (11th Cir. 1999)). Thus, this case is not, moot.

10

therefore unconstitutional); *Shanley*, 462 F.2d at 978 (holding school's literature distribution policy was unconstitutional, in part due to lack of time period during which request had to be reviewed). For these reasons, the Policy is facially unconstitutional and cannot be used by the School Board. *See Frandsen*, 212 F.3d at 1235 ("The remedy if the facial challenge is successful is the striking down of the regulation.").

## C. The As-Applied Challenge

As discussed above, only Heinkel can properly maintain an as-applied challenge to the Policy. After a thorough review of the record and briefs, we conclude that the district court did not err in granting summary judgment for the School Board on Heinkel's claim arising out of Browder's denial of her request.

While Browder's letter denying Heinkel's request referred to the Policy, it specifically stated that Browder had reviewed the materials Heinkel wished to distribute and was denying her request, not on the basis of the Policy alone, but because Browder had determined "that the documents would tend to create a substantial disruption in the school environment." (R.1-26, Ex. I.) This standard, originally stated in *Tinker*, 393 U.S. at 513, 89 S. Ct. at 740, is the appropriate

measure for restraint of student expression.[7]  In *Tinker*, the Supreme Court held that schools must tolerate student expression unless it would "'materially and substantially interfer[e] with the requirements of appropriate discipline in the operation of the school'" or "collid[e] with the rights of others."  *Id.* (citation omitted).  Although an "undifferentiated fear or apprehension of disturbance" is not sufficient to meet this test, schools need not wait until disruption actually occurs in order to prohibit student expression if they reasonably forecast that the expression will cause substantial disruption or material interference with school activities.  *See Tinker*, 393 U.S. at 508, 89 S. Ct. at 737;  *Shanley*, 462 F.2d at 970.

Applying the *Tinker* standard, the district court held the School Board acted constitutionally in denying Heinkel's request to distribute pro-life literature to her classmates.  Finding that Browder reasonably concluded that distribution of such materials would cause a material and substantial disruption to the discipline in Heinkel's school, the district court found particularly persuasive the fact that Heinkel was a middle school student who wished to distribute materials about abortion and

---

[7]Since *Tinker*, the Supreme Court has refined the framework for analyzing First Amendment claims in the public school context.  As we have explained, "[w]ithin scholastic nonpublic fora, there are four clear categories of expression:  vulgar expression, pure student expression, government expression, and school-sponsored expression."  *Bannon v. Sch. Dist. of Palm Beach County*, 387 F.3d 1208, 1213 (11th Cir. 2004).  *Tinker* involved pure student expression.  As this case also involves only pure student expression, we need not address the tests for the other forms of expression.

abortion alternatives to her classmates who ranged in age from 11 to 14. *See Walker-Serrano ex rel. Walker v. Leonard*, 325 F.3d 412, 416 (3d Cir. 2003) ("[A]ny analysis of the students' rights to expression on the one hand, and of schools' need to control behavior and foster an environment conducive to learning on the other, must necessarily take into account the age and maturity of the student."). The record also shows that birth control and abortion are not part of the middle school curriculum. (Tutko Dep. at 21-22, 33-34.) The School District's lead health education teacher explained in her deposition, "we don't discuss abortion in the school setting" because it is "a very emotional issue" that "creates some anger," "polarizes a class," and "becomes disruptive to the educational setting." (Tutko Dep. at 27-28.) These are valid considerations. *See Shanley*, 462 F.2d at 973-74 ("If the content of a student's expression could give rise to a disturbance from those who hold opposing views, then it is certainly within the power of the school administration to regulate the time, place, and manner of distribution with even greater latitude of discretion.")

We do not find clear error in the district court's finding that the record thus reflects "facts which might reasonably have led school authorities to forecast substantial disruption of or material interference with school activities." *Tinker*, 393 U.S. at 514, 89 S. Ct. at 740. As we have stated in the past, "the balancing of expression and discipline is an exercise in judgment for school administrations and

13

school boards, subject only to the constitutional requirement of reasonableness under the circumstances." *Shanley*, 462 F.2d at 975. Accordingly, the district court's judgment is affirmed to the extent that it grants the School Board summary judgment on Heinkel's claim based upon the denial of her request to distribute literature.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is: (a) reversed to the extent that it grants summary judgment to the School Board on Heinkel's facial challenge and denies injunctive relief, and (b) affirmed to the extent it grants summary judgment to the School Board on Heinkel's as-applied challenge. The case is remanded to the district court for further proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART; REMANDED WITH INSTRUCTIONS.