United States Court of Appeals,

Eleventh Circuit.

No. 95-8870.

The NATIONALIST MOVEMENT, a Mississippi non-profit corporation incorporated in Georgia, Plaintiff-Appellant,

v.

The CITY OF CUMMING, GEORGIA, Defendant-Appellee,

Forsyth County, Georgia, Forsyth County Board of Education, Defendants.

Aug. 28, 1996.

Appeal from the United States District Court for the Northern District of Georgia. (No. 2:89-cv-06-WCO), William C. O'Kelley), Judge.

Before KRAVITCH and BIRCH, Circuit Judges, and SCHWARZER[*], Senior District Judge.

KRAVITCH, Circuit Judge:

The issue in this case is whether the City of Cumming's ordinance banning parades on Saturday mornings is a reasonable time, place, and manner restriction on speech. The Nationalist Movement brought suit under the First Amendment after the City invoked the ordinance to deny permission for the Movement to hold a Saturday morning parade. A prior panel of this court determined that the ordinance was content-neutral but remanded the case to the district court for further evidentiary proceedings. The court held that remand was necessary because the City had not been given an opportunity to show "that its ordinance furthers significant municipal interests, that it is narrowly tailored to achieve those interests and that those wishing to engage in expressive activity

[*]Honorable William W. Schwarzer, Senior U.S. District Judge for the Northern District of California, sitting by designation.

in Cumming have ample alternative means of doing so." *Nationalist Movement v. City of Cumming,* 913 F.2d 885, 888 (11th Cir.1990), *vacated,* 921 F.2d 1125 (11th Cir.1990), *original opinion reinstated,* 934 F.2d 1482 (11th Cir.1991), *aff'd on different issue,* 505 U.S. 123, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992).

Upon remand, the parties agreed to submit all evidence in the form of affidavits. The district court reviewed the affidavits and concluded that the ordinance was a reasonable time, place, and manner restriction on speech and thus did not violate the First Amendment. We agree.

## I.

The Nationalist Movement sought to conduct a parade and rally in Cumming, Georgia. The purpose of the parade was to protest the federal holiday commemorating Dr. Martin Luther King, Jr. In furtherance of this plan, the Movement applied for permits with three distinct entities: the City of Cumming, Forsyth County, and the Forsyth County Board of Education. Although the Nationalist Movement originally brought suit against all three public bodies, only its case against the City of Cumming is before us on appeal.[1]

The Movement filed a permit request with the City administrator for a parade to begin at the high school grounds and to proceed down Tribble Gap Road to the courthouse. The parade was scheduled to commence at 1:00 p.m. on Saturday, January 21, 1989.

---

[1]The Movement's claim against the County was resolved by the Supreme Court in *Forsyth County v. The Nationalist Movement,* 505 U.S. 123, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992) (holding that the County's permit fee violated the First Amendment). This court previously ruled against the Movement in favor of the Board of Education. *Nationalist Movement,* 913 F.2d at 892.

The City Commission granted the permit but limited the parade participants to one-lane of Tribble Gap Road. The Movement subsequently sought to change the time of its event in Cumming to Saturday morning to accommodate an afternoon rally it intended to hold in Atlanta. According to the Movement, it planned to inform parade participants in Cumming of the Atlanta rally and urge them to travel to Atlanta as part of a caravan.

The City denied the request for a change in the parade time pursuant to the City Parade and Assembly Ordinance. The Ordinance provided, in relevant part:

> [N]o private organization or group of private persons may use the roads immediately adjacent to and those roads which lead directly to the Forsyth County Courthouse grounds for private purposes of holding a parade, assembly, demonstration, or other similar activity on any non-holiday weekday prior to 8:00 am or after 5:00 pm or any Saturday, Sunday, or public holidays prior to 1:00 pm or after 5:00 pm.

City Amended Parade and Assembly Ordinance, § 6(g).[2] The ordinance contains a lengthy preamble explaining the City's findings and purposes in enacting these restrictions, including preserving public safety, ensuring the orderly flow of traffic, restricting

---

[2]The ordinance quoted here is dated October 1, 1987. According to the parties, the Ordinance was subsequently amended in 1989. The 1989 ordinance is not included in the record on appeal to this court. Moreover, appellant specifically represented to the court that "[t]he amendment did not appear to materially change anything pertinent to the matter at hand...." Appellant's br. at 2. Accordingly, we rely on the 1987 ordinance.

In this appeal, for the first time, appellant argues that the ordinance is unconstitutional because it exempts the annual Fourth of July parade. This provision is not part of the 1987 ordinance. We assume that the exemption was enacted by the later amendment. Because appellant did not raise this issue before this court in its prior appeal and because it has specifically disclaimed any reliance on the 1989 amendment, we decline to address this argument.

interference with the administration of justice at the courthouse, and protecting the rights of citizens residing in close proximity to the courthouse.[3]

After this court remanded the case, the City provided evidence in support of its ordinance. The city manager, a business manager, a drugstore owner, a banker, and a physician signed affidavits attesting that the Saturday morning ban was beneficial to residents who conduct business in the courthouse square on Saturday mornings. These affiants uniformly observed more traffic on Saturday mornings than Saturday afternoons.

The City Manager, Gerald Blackburn, stated that the following businesses are located directly on the square: a drug store, doctors' offices, a retail outlet, an antique shop, a furniture store, a barber shop, a beauty salon, real estate agents' offices, and two banks. He further noted that all of these businesses, as well as several stores within a few blocks of the square, are open on Saturday mornings. Moreover, Blackburn stated that he personally has received several complaints from proprietors of these businesses concerning the disruption in traffic when parades or rallies are held on Saturday mornings. He noted that traffic in Cumming is particularly heavy on Saturday mornings because local residents are coming downtown to conduct business while others are passing through Cumming on their way to Atlanta or the North Georgia Mountains.

Jimmy Goodson, owner of a drugstore on the courthouse square,

---

[3]The preamble is set forth in this court's earlier opinion, *Nationalist Movement,* 913 F.2d at 889 n. 3.

and Dr. Shannon Mize, whose office is located on the square, submitted affidavits stating that they were personally aware of many patients who were only able to schedule doctors' appointments or fill prescriptions during Saturday mornings. Both of these affiants were personally aware of the traffic disruption that occurs when parades and rallies are scheduled for Saturday mornings.

In response, the Movement submitted an affidavit from Daniel Carver, a resident of Oakwood, Georgia, who has attended events in Cumming on Saturday mornings. This affiant described Cumming as lacking any urban congestion and stated that there is no difference between the traffic on Saturday mornings and Saturday afternoons. The district court relied heavily on the City's affidavits in holding that the ordinance was constitutional.

## II.

The only issue before this court is whether the City's ban on Saturday morning parades is a reasonable time, place and manner restriction on speech.[4] Although the Nationalist Movement seeks to introduce other issues, it is precluded from doing so for two reasons. First, in its prior appeal to this court, the Movement argued only that the ordinance was a blanket prohibition on speech rather than a reasonable time, place and manner restriction and that the City had not proven its interest in controlling traffic. The Movement did not raise the issues of overbreadth, vagueness and

---

[4]This court originally remanded to allow the City to present evidence with respect to two issues: the Saturday morning ban and the restriction to one lane of Tribble Gap Road. The Movement voluntarily dismissed the second issue. Appellant's br. at 2 n. 2.

equal protection that it seeks to introduce here; thus, the Movement waived these claims by failing to raise them in the prior appeal.

Second, the Movement's attorney agreed to narrow the issue to the Saturday morning ban during a pre-trial conference with the district court as reflected by a pre-trial order of the court. [5] Parties are bound by such representations in order to allow the court to efficiently manage its docket. *See United States v. First Nat'l Bank of Circle,* 652 F.2d 882, 886 (9th Cir.1981) ("Unless pretrial orders are honored and enforced, the objectives of the pretrial conference to simplify issues and avoid unnecessary proof ... will be jeopardized if not entirely nullified."). Accordingly, we turn to the single issue before us.

It is undisputed that the streets of the City of Cumming leading to the courthouse are quintessential public forums. Therefore, the City's right to limit expressive activity on these streets is "sharply circumscribed." *Perry Education Assoc. v. Perry Local Educators' Assoc.,* 460 U.S. 37, 45, 103 S.Ct. 948, 954-55, 74 L.Ed.2d 794 (1983). The City, however, may enforce reasonable restrictions on the time, place, and manner of the speech if they are "content neutral, are narrowly tailored to achieve a significant government interest, and leave open ample

---

[5]The pretrial order stated that "[P]laintiff and defendant also agree that the remaining issue between the parties is the constitutionality of the Cumming ordinance, as set forth in the remand from the Eleventh Circuit." R. 3-74 at 1. As previously noted, this court remanded for the limited purpose of allowing the City to submit evidence on whether its ordinance was narrowly tailored to achieve a significant government interest and whether ample alternative means of communication existed. *Nationalist Movement,* 913 F.2d at 889-90.

alternative channels of communication."  *Id.*

The prior panel of this court held that the Saturday morning ban on parades is content-neutral.  We are bound by the law of the case.[6]  Thus, we need only decide the three remaining issues:  1) whether the City has advanced evidence that the ordinance furthers a significant government interest, 2) whether the ordinance is narrowly tailored to achieve these objectives, and 3) whether the ordinance leaves open alternative means of expression.

The City has argued that it has a significant interest in controlling traffic and ensuring the convenience and safety of its citizens.  The City submitted affidavits attesting to increased traffic on Saturday mornings and the need for local citizens to have access to doctors' offices, a drug store and other businesses.  It is well established that these are significant governmental interests.  *Cox v. State of Louisiana,* 379 U.S. 536, 553–55, 85 S.Ct. 453, 464, 13 L.Ed.2d 471 (1965) ("Governmental authorities have the duty and responsibility to keep their streets open and available for movement.");  *see also Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 506–09, 101 S.Ct. 2882, 2892–93, 69 L.Ed.2d 800 (1981) (holding that traffic safety is a substantial government goal).  Accordingly, the City has met the first of the requirements for a reasonable time, place and manner restriction.

In evaluating whether the ordinance is narrowly tailored to achieve these goals, we are mindful of the standards set forth by

---

[6]*See United States v. Robinson,* 690 F.2d 869, 872 (11th Cir.1982) ("Under the law of the case doctrine, both the district court and the court of appeals generally are bound by findings of fact and conclusions of law made by the court of appeals in a prior appeal of the same case.").

the Supreme Court on this issue. In *Ward v. Rock Against Racism,* 491 U.S. 781, 799-800, 109 S.Ct. 2746, 2758, 105 L.Ed.2d 661 (1989), the Court stated that the requirement of narrow tailoring is satisfied if " "the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.' " *Id.* (quoting *United States v. Albertini,* 472 U.S. 675, 689, 105 S.Ct. 2897, 2906, 86 L.Ed.2d 536 (1985)). The Court further noted that "[s]o long as the means chosen are not substantially broader than necessary to achieve the government's interest, ... the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Ward Rock,* 491 U.S. at 800, 109 S.Ct. at 2758. The Court cautioned, however, that the restriction may not burden significantly more speech than necessary to achieve the government's goals. *Id.*

The City has submitted affidavits showing that the ordinance is narrowly drawn to achieve its aims. The evidence in the record establishes that Saturday morning is a particularly congested time of the day in the City of Cumming because of traffic leading to Atlanta and to the Georgia mountains. [7] In addition, local

---

[7]This case is distinguishable from *Beckerman v. City of Tupelo,* 664 F.2d 502, 513 (5th Cir. Unit A 1981), which is not binding in this circuit. The plaintiffs in *Beckerman* challenged an ordinance which prohibited parades in the downtown area after 6 p.m. and provided standards for the conduct of marchers. School groups and government agencies were excluded from the marching standards. The court held that the time restrictions were overbroad because the City claimed that they had a security interest in preventing night parades, but daylight extended past 6 p.m. in Tupelo for significant portions of the year. Here, in contrast, the City asserted an interest in traffic control and accordingly limited parades during the time of the day with the heaviest traffic. The *Beckerman* court also struck down the

residents from outside of the City use Saturday mornings to attend doctor's appointments and to conduct business. The City has presented sufficient evidence to establish that its desire to control traffic and to promote safety would be achieved less effectively in the absence of the regulation. Moreover, the ban on parades in the morning is not substantially broader than needed to further the City's purposes because the ordinance prohibits parades during those hours when the City has determined that traffic is heaviest. See *Metromedia,* 453 U.S. at 508-09, 101 S.Ct. at 2893 (deferring to local authorities with respect to legislative judgements as to traffic matters).

Finally, we address whether ample alternative channels of communication are available. The ordinance does not prohibit leafletting, distributing pamphlets, or marching on the streets not adjacent to, or leading directly to the courthouse grounds. Moreover, parades and assemblies are allowed on Saturday afternoons. The Movement has many alternative means to communicate its message.

### III.

Accordingly, we hold that the ban on Saturday morning parades is a reasonable time, place and manner restriction and AFFIRM the decision of the district court upholding the constitutionality of the City of Cumming's ordinance.

---

exclusion of school and government groups from the regulations as violative of equal protection. As previously noted, appellant has waived an equal protection argument by failing to raise this issue in its first appeal and expressly agreeing to limit the issue in this case to the reasonableness of the Saturday morning ban.