[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 15, 2004
THOMAS K. KAHN
CLERK

No. 03-11756

D. C. Docket No.03-00042-CV-1

MARTHA BURK,
Chair, National Council of Women's Organizations,
NATIONAL COUNCIL OF WOMEN'S ORGANIZATIONS, et al.,

Plaintiffs-Appellants,

versus

AUGUSTA-RICHMOND COUNTY,
Consolidated Government,
AUGUSTA-RICHMOND COUNTY COMMISSION, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(April 15, 2004)**

Before ANDERSON, BARKETT and RONEY, Circuit Judges.

ANDERSON, Circuit Judge:

INTRODUCTION

Martha Burk, the National Council of Women's Organizations, and the Rainbow/PUSH Coalition (referred to collectively as "Burk") appeal from the district court's denial of their motion for preliminary injunction in a challenge to the constitutionality of Augusta-Richmond County's permitting requirement for public demonstrations in groups of five or more people. The appeal presents two questions: (1) the facial constitutionality of requiring groups of five or more persons to obtain a permit before publicly engaging in political expression in a public forum; and (2) whether requiring permit applicants to submit an indemnification agreement "in a form satisfactory" to the county attorney grants the attorney unconstitutional discretion over permitting decisions. We find the Ordinance unconstitutional in each respect and reverse.

A.  The Augusta-Richmond County Ordinance

Section 3-4-11 of the Augusta-Richmond County Code (the "Ordinance"), enacted in anticipation of protests during the then-forthcoming Masters Golf Tournament held annually at the Augusta National Golf Club, states:

> There shall be no public demonstration or protest, (hereinafter collectively referred to as "event") consisting of five (5) or more persons on any sidewalk, street, public right-of-way or other public property within Augusta unless a permit for same has been issued for such event by the Sheriff of Richmond County.

2

Augusta-Richmond County Code § 3-4-11. The Code defines "Protest/Demonstration" as "Any expression of support for, or protest of, any person, issue, political or other cause or action which is manifested by the physical presence of persons, or the display of signs, posters, banners, and the like." § 3-4-1(e). Violating the Ordinance is a misdemeanor punishable by a $1,000 fine and/or 60 days imprisonment. §§ 3-4-13; 1-6-1.

In addition to information such as the name and address of the applicant and a description of the planned event, see §§ 3-4-11(a)(1)-(2), a permit applicant must furnish an indemnification and hold-harmless agreement suitable to the county attorney, § 3-4-11(a)(3). The County Sheriff may deny an application for any of several reasons. See § 3-4-11(b)(3).

B. Procedural History

Burk sued the Augusta-Richmond County Consolidated Government, the Augusta-Richmond County Commission, the Mayor of Augusta, and the Richmond County Sheriff (collectively, "the County") under 42 U.S.C. § 1983 to enjoin enforcement of the Ordinance, claiming it violated her First Amendment right to free speech. The district court converted Burk's motion for a temporary restraining order into a motion for preliminary injunction and denied it, finding that Burk failed to prove a likelihood of success on the merits. Burk appeals that

determination and asks this Court to uphold her facial challenge to the Ordinance.[1]

Because this appeal presents pure questions of law and our disposition dictates the

outcome of the underlying claim, we accept the invitation.  See, e.g., Callaway v.

Block, 763 F.2d 1283, 1287 & n.6 (11th Cir. 1985).  We review the district court's

legal conclusions de novo.  This That & The Other Gift & Tobacco, Inc. v. Cobb

County, 285 F.3d 1319, 1321 (11th Cir. 2002).

## DISCUSSION

A.  The Constitutionality of the Permitting Provision

Burk argues that the permitting provision constitutes a facial violation of the

First Amendment by impermissibly discriminating on the basis of content of speech

in public fora[2] and by granting the County Sheriff excessive discretion over

permitting decisions.  Because we agree with her on content discrimination, we

decline to reach her discretion argument as it relates to the permitting requirement

generally.

Because it requires groups of five or more people to obtain permission from

---

[1]In addition to the facial challenge Burk asserts on appeal, in the district court she also challenged the Ordinance as applied to her.  She does not appeal the denial of her motion for preliminary injunction with respect to the as-applied claim, which is thus deemed abandoned. With respect to the facial challenge, the County does not argue that a facial challenge is inappropriate under these circumstances.

[2]The Ordinance regulates speech on sidewalks, streets, public rights-of-way, and "any other public property."  § 3-4-11.  No one disputes that this case involves speech in public fora.

the County Sheriff in order to carry out a protest or demonstration, the Augusta-Richmond Ordinance is a prior restraint on speech. See United States v. Frandsen, 212 F.3d 1231, 1236-37 (11th Cir. 2000) ("A prior restraint of expression exists when the government can deny access to a forum before the expression occurs."). Prior restraints are presumptively unconstitutional and face strict scrutiny. Id. at 1237; Church of Scientology Flag Serv. v. City of Clearwater, 2 F.3d 1514, 1547-48 (11th Cir. 1993). Nonetheless, a prior restraint may be approved if it qualifies as a regulation of the time, place, and manner of expression rather than a regulation of content. Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S. Ct. 2746, 2754 (1989); Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1316 (11th Cir. 2000). A content-neutral time, place, and manner regulation must leave open alternative channels of communication and survive "intermediate scrutiny," the requirement that it not restrict substantially more speech than necessary to further a legitimate government interest. Ward, 491 U.S. at 799, 109 S. Ct. at 2758.[3] By contrast, content-based speech regulations face "strict scrutiny," the requirement that the government use the least restrictive means of advancing a compelling government interest. United States v. Playboy

---

[3]A content-neutral time, place, and manner regulation also must not vest public officials with unbridled discretion over permitting decisions. Shuttlesworth v. Birmingham, 394 U.S. 147, 150-51, 89 S. Ct. 935, 938-39 (1969).

5

Entm't Group, 529 U.S. 803, 813, 120 S. Ct. 1878, 1886 (2000).

Accordingly, we first inquire whether the Ordinance is content-neutral.  See

Ward, 491 U.S. at 791, 109 S. Ct. at 2754.  It is not.  The Ordinance applies only to

"public demonstration or protest," § 3-4-11, defined as "support for, or protest of,

any person, issue, political or other cause or action," § 3-4-1(e).  Neither in its brief

nor at oral argument has the County disputed Burk's assertion that this language

targets "political" expression, however defined.[4]  Nor has the County disputed the

fact that the Ordinance leaves other speech untouched.  The Ordinance therefore

classifies and regulates expression on the basis of content.  Accord Hall v. Bd. of

Sch. Comm'rs, 681 F.2d 965, 970-971 (5th Cir. Unit B 1982) ("The Board has

sought to regulate that speech based upon its content: whether it is 'political or

sectarian,' or 'special interest material.'  This is not regulation of 'time, place, or

manner' of expression.");[5] see also Consol. Edison Co. v. Pub. Serv. Comm'n, 447

U.S. 530, 533, 100 S. Ct. 2326, 2330-31 (1980) (holding content-based a regulation

that barred utility company bill inserts expressing "opinions or viewpoints on

controversial issues of public policy" but did not bar "topics that are not

---

[4]Thus we use the term "political" as an apt shorthand term to describe the speech targeted by the instant ordinance.

[5]In Stein v. Reynolds Securities, Inc., 667 F.2d 33, 34 (11th Cir. 1982), this Circuit adopted as binding precedent decisions issued by Unit B of the former Fifth Circuit after September 30, 1981.

'controversial issues of public policy'").

The County argues that we must find the Ordinance content-neutral under Hill v. Colorado, 530 U.S. 703, 120 S. Ct. 2480 (2000), and Frisby v. Schultz, 487 U.S. 474, 108 S. Ct. 2495 (1988). We disagree; we do not believe either decision erodes our holding in Hall that targeting only political speech renders a regulation content-based. We address each case in turn.[6]

In Hill v. Colorado, the Supreme Court found content-neutral a Colorado statute that prohibited any person "within the regulated areas . . . to knowingly approach within eight feet of another person, without that person's consent, for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person." Id. at 707, 120 S. Ct. at 2484. The County argues that if a statute regulating only those engaged in protest, education, or counseling is content-neutral, then surely an ordinance regulating only political protests and demonstrations is content-neutral as well.

A close reading of Hill reveals that the analogy fails. Hill relied heavily on the notions that "[t]he principal inquiry in determining content neutrality . . . is

---

[6]The County also argues the Ordinance is not content-based because it applies equally to all political speech. That argument misses the mark completely. It asserts only that the Ordinance does not discriminate based on viewpoint and fails to address the issue of subject-matter discrimination.

whether the government has adopted a regulation of speech because of disagreement with the message it conveys," id. at 719, 120 S. Ct. at 2491 (citing Ward, 491 U.S. at 791, 109 S. Ct. at 2754), and "government regulation of expressive activity is 'content neutral' if it is justified without reference to the content of regulated speech," id. at 720, 120 S. Ct. at 2491 (citing Ward, 491 U.S. at 791, 109 S. Ct. at 2754). The statute at issue in Hill was "justified without reference to the content of regulated speech" because it did not "distinguish among speech instances that are similarly likely to raise the legitimate concerns to which it responds." Id. at 724, 120 S. Ct. at 2493. The distinctions it drew were justified by a legislative concern independent of content – protecting persons walking into health care facilities. Id. ("[T]he statute's restriction seeks to protect those who enter a health care facility from the harassment, the nuisance, the persistent importuning, the dogging, and the implied threat of physical touching that can accompany an unwelcome approach within eight feet of a patient by a person wishing to argue vociferously face-to-face and perhaps thrust an undesired handbill upon her."). In fact, the statute at issue in Hill "places no restrictions on – and clearly does not prohibit – either a particular viewpoint or any subject matter." Id. at 723, 120 S. Ct. at 2493.

The Augusta-Richmond County Ordinance differs from the statute at issue in

Hill because it "places restrictions on" certain subject matter, political expression, and is not "justified without reference to the content of regulated speech." Id. at 720, 120 S. Ct. at 2491. In this case, the latter characteristic is apparent from the poor fit between the Ordinance's means and purported ends. Hill instructs that "[a] statute that restricts certain categories of speech only lends itself to invidious use [the vice of content-based regulation] if there is a significant number of communications, raising the same problem that the statute was enacted to solve, that fall outside the statute's scope, while others fall inside." Id. at 723, 120 S. Ct. at 2493 (citing Police Dep't of Chicago v. Mosley, 408 U.S. 92, 92 S. Ct. 2286 (1972)). The statute in Hill did not "distinguish among speech instances that are similarly likely to raise the legitimate concerns to which it responds." Id. at 724, 120 S. Ct. at 2493. By contrast, the Ordinance at issue in this case does distinguish among speech instances that raise the same concerns. The Ordinance's purported goals are maintaining public safety, avoiding traffic congestion, keeping the peace, and providing advance notice to law enforcement officials of public events. See § 3-4-11(b)(3). But the Ordinance regulates countless expressive activities that do not threaten public safety, traffic, or the peace, and it fails to regulate countless other expressive activities that do threaten the harms. For example, the ordinance does not apply to numerous activities involving more than five people – e.g., a

9

street party, a tail-gating party, a sidewalk performance by a five-person musical group, or even a high school band – that will likely threaten the County's feared harms. And the Ordinance restricts a five-person political discussion or silent sit-in on the sidewalk's edge even though such events are unlikely to threaten the County's feared harms.[7] In other words, there are easily "a significant number of communications, raising the same problem that the statute was enacted to solve, that fall outside the statute's scope, while others fall inside." Hill, 530 U.S. at 723, 120 S. Ct. at 2493. Therefore, the Ordinance is not justified by its purported content-independent goals, and the County has regulated based on content. Id. at 723-24, 120 S. Ct. at 2493.[8]

The County also misses the mark with Frisby v. Schultz, 487 U.S. 474, 108 S. Ct. 2495. In Frisby, the Supreme Court approved a prohibition on picketing in

---

[7]The County's poor focus on targeting the harm it has identified is highlighted by the existence of a separate permitting requirement for all gatherings involving more than 1,000 people. See §§ 3-4-1(b); 3-4-3. The County cannot seriously believe that political expression involving as few as five people is likely to disrupt traffic, disturb the peace, threaten public safety, and require advance notice to public officials, but that other public gatherings only threaten such harms when they involve more than 1,000 participants.

[8]While an express disavowal of any intent to regulate the content of speech, as contained in § 3-4-11(d), may be taken into account as relevant evidence, we cannot conclude that it can nullify the clear and obvious distinction among subject matters contained in the Ordinance and the "significant number of communications raising the same problem . . . that fall outside the statute's scope, while others fall inside," Hill, id. at 723, 120 S. Ct. at 2493. In such circumstances, we cannot conclude that there is a clear intent not to regulate the content of speech.

10

front of individual residences. The Court accepted the ordinance as content-neutral when construed not to exempt labor picketing. 487 U.S. at 481-82, 108 S. Ct. at 2501.

The County argues that Frisby made no mention of the possibility that the ordinance may have been content-based because it restricted picketing, which is a method of political protest, but did not restrict other expressive conduct. It argues that if regulations of "picketing" are content-neutral, then regulations of "protest or demonstration" should be content-neutral.

The County errs by failing to appreciate the difference between picketing – which is a method of delivery of speech involving conduct without regard to any particular message or subject matter – and the County's definition of "Protest/Demonstration," which expressly targets all expression on a certain subject matter, political speech. See § 3-4-1(e). Of course, people engaging in picketing nearly always intend to send a message of some kind along with their acts. However, the acts themselves – standing, marching, or holding a sign, for example – do not involve any particular expressive content, and the conduct may therefore be regulated without burdening any particular viewpoint or subject

11

matter.[9]  A content-neutral conduct regulation like those at issue in <u>Frisby</u> and <u>Hill</u> "places no restrictions on – and clearly does not prohibit – either a particular viewpoint or any subject matter that may be discussed," <u>Hill</u>, 530 U.S. at 723, 120 S. Ct. at 2493, and it may be said about such regulations that they have nothing to do with the content of speech but rather are imposed because of the nature of the regulated conduct, <u>see</u> <u>id.</u> at 737, 120 S. Ct. at 2500-01 (Souter, J., concurring, joined by O'Connor, J., Ginsburg, J., and Breyer, J.) ("The correct rule . . . is captured in the formulation that a restriction is content-based only if it is imposed because of the content of the speech and not because of offensive behavior identified with its delivery. . . . The facts overwhelmingly demonstrate the validity of [the statute at issue in <u>Hill</u>] as a content-neutral regulation imposed solely to regulate the <u>manner</u> in which speakers may conduct themselves within 100 feet of the entrance of a health care facility.") (emphasis added) (citation omitted).[10]  Thus, a content-neutral conduct regulation applies equally to all, and not just to those

---

[9]Thus picketing is distinct from conduct such as flag-burning that is clearly intended to express a particularized message.  <u>See</u> <u>United States v. Eichman</u>, 496 U.S. 310, 315 (1990).

[10]Justice Scalia, joined by Justice Thomas, dissenting in <u>Hill</u>, made this same point when he distinguished picketing as a restriction on "a particular manner of expression."  <u>Id.</u> at 744, 120 S. Ct. at 2505.  This point was also made by Justice Brennan, joined by Justice Marshall, dissenting in <u>Frisby</u>.  <u>See</u> 487 U.S. at 491-92, 108 S. Ct. at 2506 ("The ordinance before us absolutely prohibits picketing 'before or about' any residence in the town . . ., thereby restricting a manner of speech in a traditional public forum.  Consequently, as the Court correctly states, the ordinance is subject to the well-settled time, place and manner test.").

with a particular message or subject matter in mind.  Id. at 723, 120 S. Ct. at 2493

("Instead of drawing distinctions based on the subject matter that the . . . speaker

may wish to address, the statute applies equally to used car salesmen, animal rights

activists, fundraisers, environmentalists, and missionaries.").  The same cannot be

said of the Augusta-Richmond County Ordinance because it applies to a particular

subject mater of expression, politics, rather than to particular conduct, such as

picketing.[11]

Finally, it is useful to contrast the Augusta-Richmond County Ordinance and

an ordinance the Supreme Court addressed in Thomas v. Chicago Park District, 534

U.S. 316, 122 S. Ct. 775 (2002).  In that case, the Supreme Court found an

ordinance content-neutral and rejected a challenge under Freedman v. Maryland,

380 U.S. 51, 85 S. Ct. 734 (1965) (requiring procedural safeguards in content-

based regulatory contexts).  However, the ordinance at issue in Thomas required a

---

[11]Thus, Frisby would be more apposite if instead of prohibiting picketing in front of individual residences, the ordinance at issue there prohibited all political expression in front of individual residences.  Like the ordinance at issue here, it would have been a content-based regulation of expression on its face rather than a content-neutral regulation of conduct; and it would not have been justified without reference to content because of the poor fit between its means and purported goals.

And the instant case would be more like Frisby if the Ordinance regulated only displays of signs, posters, or banners rather than all political expression in groups of five or more, see § 3-4-1(e) ("[a]ny expression of support for, or protest of, any person, issue, political or other cause or action which is manifested by the physical presence of persons") (emphasis added), and only in particular locations rather than in all public space, § 3-4-11.

13

permit for all public assemblies of more than 50 people, regardless of purpose. The Court readily found that the ordinance was content-neutral, explaining that "the ordinance . . . is not even directed to communicative activity as such, but rather to all activity conducted in a public park. The picnicker and soccer-player, no less than the political activist or parade marshal, must apply for a permit if the 50-person limit is to be exceeded." 534 U.S. at 322, 122 S. Ct. at 779 (emphasis added). By contrast, the Augusta-Richmond County Ordinance is directed only to communicative activity, rather than to all activity, and its applicability turns <u>solely</u> on the subject matter of what a speaker might say. The Ordinance regulates only political speakers, leaving soccer-players, sidewalk performers, and tailgating groups untouched.

Because the Ordinance is a content-based prior restraint on speech, we must strictly scrutinize it to ascertain whether it employs the least restrictive means to meet a compelling government interest. <u>See</u> <u>Playboy</u>, 529 U.S. at 813, 120 S. Ct. at 1886.[12] Few laws survive such scrutiny, and this Ordinance is no exception. The County could promote its goals through numerous less restrictive means. It could, for example, target only offensive behavior or the manner of delivery of speech

---

[12]A content-based prior restraint must also satisfy the procedural requirements of <u>Freedman v. Maryland</u>, 380 U.S. 51, 85 S. Ct. 734 (1965). However, Burk does not challenge the Ordinance on <u>Freedman</u> grounds.

without regard to viewpoint or subject matter.  Or it could tailor its regulation more closely to fit expressive instances or conduct likely to threaten the harms it fears. Or it could enact an ordinance like that at issue in <u>Thomas</u>, which applies generally, without reference to expressive content, and only to larger groups.[13] Finally, it is clear that regulating as few as five peaceful protestors (e.g. silently sitting in on the edge of the sidewalk) is not the least restrictive means of accomplishing the County's legitimate traffic flow and peace-keeping concerns.[14]

For these reasons, we readily conclude that the County has failed to carry its burden of proving, <u>see</u> <u>Playboy</u>, <u>id.</u> at 816, 120 S. Ct. at 1888, that this content-based Ordinance is sufficiently tailored to survive strict scrutiny.  We hold that it is

---

[13]Because we hold that the Ordinance is content-based and fails strict scrutiny, we need not address Burk's argument that because it applies to groups as small as five persons, the Ordinance would fail even the less stringent tailoring requirement for content-neutral regulations that the government not burden "substantially more speech than is necessary to further the government's legitimate interests."  <u>Ward</u>, 491 U.S. at 799, 109 S. Ct. at 2758.  We do note that several courts have invalidated content-neutral permitting requirements because their application to small groups rendered them insufficiently tailored.  <u>See</u> <u>Douglas v. Brownell</u>, 88 F.3d 1511, 1524 (8th Cir. 1996) (10 or more people); <u>Grossman v. City of Portland</u>, 33 F.3d 1200, 1206 (9th Cir. 1994) (6 to 8 people); <u>Community for Creative Non-Violence v. Turner</u>, 893 F.2d 1387, 1392 (D.C. Cir. 1990) (2 or more people); <u>Cox v. City of Charleston</u>, 250 F. Supp. 2d 583, 590 (D.S.C. 2003) ("small gatherings or sole protestors").

[14]It is clear from the applications received by the County and the number of persons desiring to demonstrate in a location surrounding the entrance to the Masters Tournament that the County's legitimate interest is very substantial.  Because we find that the Ordinance is not narrowly tailored, we need not determine whether the County's interests are compelling. However, as suggested in the text, the County's interests can be protected by an appropriately drafted ordinance or otherwise without violating the First Amendment.

15

unconstitutional.

B. The Constitutionality of the Indemnification Provision

The Augusta-Richmond Ordinance also requires permit applicants to indemnify the County for damages arising from a planned protest or demonstration:

> "[T]he applicant shall provide an indemnification and hold harmless agreement in favor of Augusta, Georgia and its elected officials, the Augusta-Richmond County Commission, the Sheriff of Richmond County, and their officers, agents and employees in a form satisfactory to the attorney for Augusta, Georgia.

§ 3-4-11(a)(3). Burk argues that this provision grants the county attorney excessive discretion, imports content-based criteria into the permitting process, and is overbroad and chills speech. We agree that it grants excessive discretion and therefore decline to reach Burk's other challenges to the provision.

Even a facially content-neutral time, place, and manner regulation may not vest public officials with unbridled discretion over permitting decisions. See Shuttlesworth v. Birmingham, 394 U.S. 147, 150-51, 89 S. Ct. 935, 938-39 (1969); Forsyth County v. Nationalist Movement, 505 U.S. 123, 130-31, 122 S. Ct. 2395, 2401-02 (1992). Excessive discretion over permitting decisions is constitutionally suspect because it creates the opportunity for undetectable censorship and signals a lack of narrow tailoring. See Forsyth County, 505 U.S. at 130-31, 122 S. Ct. at 2401-02; Lady J. Lingerie, Inc. v. City of Jacksonville, 176 F.3d 1358, 1362 (11th

Cir. 1999); <u>Miami Herald Pub. Co. v. City of Hallandale</u>, 734 F.2d 666, 675 (11th Cir. 1984). Therefore, time, place, and manner regulations must contain "narrowly drawn, reasonable and definite standards," <u>Thomas</u>, 534 U.S. at 324, 122 S. Ct. at 781, "to guide the official's decision and render it subject to effective judicial review," <u>id.</u> at 323, 122 S. Ct. at 780.

We readily conclude that the indemnification provision in the Augusta-Richmond Ordinance fails to provide adequate standards. It requires an indemnification agreement "in a form satisfactory to the attorney for Augusta, Georgia," § 3-4-11(a)(3), and gives no guidance regarding what should be considered "satisfactory." Thus, the requirement is standardless and leaves acceptance or rejection of indemnification agreements "to the whim of the administrator." <u>Thomas</u>, 534 U.S. at 324, 122 S. Ct. at 781 (citing <u>Forsyth County</u>, 505 U.S. at 133, 112 S. Ct. at 2403).

The County has virtually conceded as much by arguing only that the requirement has been administered with flexibility and permissiveness. It argues that the county attorney has approved a variety of indemnification agreements, and no application has ever been denied for failure to include an agreement. The County also frames this as a "well-established practice," <u>see, e.g.</u>, <u>City of Lakewood v. Plain Dealer Publishing Co.</u>, 486 U.S. 750, 770, 108 S. Ct. 2138,

17

2151 (1988) ("The doctrine requires that the limits [on official discretion] the city claims are implicit in its law be made explicit by textual incorporation, binding judicial or administrative construction, or well-established practice."), apparently asserting that a practice of permissiveness and flexibility somehow restrains the attorney's discretion.

We cannot conclude on this record that the County has demonstrated a "well-established practice," id., that subjects the county attorney's discretion to "narrowly drawn, reasonable and definite standards," Thomas, 534 U.S. at 324, 122 S. Ct. at 781. The Sheriff's affidavit asserts that "to my knowledge and recollection, the Sheriff's Office has never denied a permit application for any reason related to the failure to give an indemnification and hold harmless agreement or the particular form of said agreement, which was provided by an applicant. In fact, I cannot recall any application for a permit under § 3-4-11 as amended or its predecessor being denied completely for any reason." Even if we assume arguendo that a well-established practice of not requiring an indemnity could nullify the clear statutory mandate that "the applicant shall provide an indemnification," § 3-4-11(a)(3), we know that the instant ordinance has virtually no history, having been enacted only

18

in the month before the instant applications.[15]  Moreover, we also know that the applicants during this period were also given a "sample" form of indemnification agreement, which belies a well-established practice of non-enforcement.  The Supreme Court in Lakewood struck a permitting ordinance as facially unconstitutional in a similar pre-enforcement challenge.  486 U.S. at 770, 108 S. Ct. at 151 n.11.  See also Forsyth County, 505 U.S. at 129-33, 112 S. Ct. at 2400-03 (striking as facially unconstitutional an ordinance because of overly broad discretion with respect to the fee to cover expenses associated with the permit, and noting in footnote 10 that it was irrelevant to the facial challenge that the fee charged in the instant situation was content-neutral, and that the "pervasive threat inherent in its very existence . . . constitutes the danger to freedom of discussion.").

Finally, the County cites the district court's approval of permit fees in the case that ultimately became Thomas in the Supreme Court.  That case is inapposite.  The provision at issue there contained a precise fee schedule tied to the type of event and number of expected attendees, and an indemnification provision triggered by the number of people expected at the event.  It left officials "little, if any, discretion to make the type of content-based determinations that [the plaintiff]

_____

[15]We also know that an application can be denied for failure to fully complete and properly execute any required submission, 3-4-11(b)(3)a, which includes the indemnification agreement.

and the [Supreme] Court in <u>Forsyth</u> are concerned about." <u>See</u> <u>MacDonald v. Chicago Park Dist.</u>, 1999 U.S. Dist. LEXIS 5692 *17-18 (N.D. Ill. 1999). Thus, it was wholly unlike the indemnification provision at issue here.

Because we find the indemnification provision unconstitutional in its grant of excessive discretion to the county attorney, we decline to reach Burk's other arguments challenging that provision.

CONCLUSION

Section 3-4-11's permitting requirement is unconstitutional as a content-based prior restraint that is not narrowly tailored to survive strict scrutiny. The indemnification provision is unconstitutional because it grants excessive discretion over permitting decisions to the county attorney. The judgment of the district court is therefore reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.

BARKETT, Circuit Judge, concurring:

I concur with the opinion because I agree with the Court's holding that the Ordinance in question ("§ 3-4-11") is content-based. I write only to add my view that the Ordinance would fail to pass constitutional muster even if it were not content-based.

An ordinance requiring a permit "before authorizing public speaking, parades, or assemblies" in a traditional public forum bears a "heavy presumption against" it as a prior restraint. Forsyth County, Ga. v. Nationalist Movement, 505 U.S. 123, 130 (1992)(internal citations omitted). To survive constitutional scrutiny, it: "may not delegate overly broad licensing discretion to a government official"; "must not be based on the content of the message"; "must be narrowly tailored to serve a significant governmental interest"; and "must leave open ample alternatives for communication." Id. In addition to Judge Anderson's content-based analysis, I believe that § 3-4-11 independently fails each of these other prerequisites to constitutionality as well. I focus my comments on the Ordinance's over-broad delegation of licensing discretion and its utter lack of narrow tailoring.

The Ordinance vests the Sheriff with the power to deny a permit "in whole or in part for any reason if the Sheriff determines that the plan submitted by the applicant will raise public safety concerns to those participating in the event or to

21

the public . . ." (emphasis added).[1]  I believe this is an unconstitutional grant of unbridled discretion.  See e.g., Shuttlesworth v. City of Birmingham, 394 U.S. 147, 150-51, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969) ("a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional");  Lady J. Lingerie, Inc. v. City of Jacksonville, 176 F.3d 1358, 1362 (1999) ("virtually any amount of discretion beyond the merely ministerial is suspect.").

Although the Ordinance superficially limits the Sheriff's determination to public safety considerations, the criteria the Sheriff may consider is vague, undefined and completely subjective.  It permits the Sheriff to deny a permit for "any reason" if the Sheriff is satisfied that it will only "raise" public safety concerns.  "It can thus . . . be made the instrument of arbitrary suppression of free expression of views." Hague v. Committee of Industrial Organizations, 307 U.S. 496, 516 (1939)(striking down statute that "enable[d] the Director of Safety to refuse a permit on his mere opinion that such refusal will prevent 'riots,

---

[1]The Ordinance also permits the Sheriff to refuse a permit if the proposed plan "would unduly restrict and/or congest traffic ( motor vehicle or pedestrian) on any of the public roads, right of ways or sidewalks in the immediate vicinity of such event" (emphasis added) and if it "would lead to an unreasonable disturbance of the peace in the area at the time of the proposed event" (emphasis added).

disturbances or disorderly assemblage."); see also Lady J. Lingerie, Inc., 176 F.3d at 1362 (1999) (noting that even a "seemingly-innocuous fire safety provision" presented too great of a danger that the ordinance would be used to "covertly discriminate" against protected expression).

Unlike the dissent, I believe that Thomas v. Chicago, 534 U.S. 316 (2002) is inapposite to this case. The ordinance in Thomas sets out thirteen "narrowly drawn, reasonable and definite standards" for the denial of a use-permit for large-groups of over 50 people in busy Chicago parks. Id. at 324. In contrast, Ordinance § 3-4-11 allows the Sheriff to deny a permit to groups 1/10th the size of those regulated in Thomas, in virtually all public places, for "any reason" that in his own mind raises public safety concerns. Unlike the Thomas ordinance, which requires a finding that the intended use or activity "would present an unreasonable danger to . . . health or safety," id. at 318 n.1 (emphasis added), Ordinance § 3-4-11 allows the Sheriff to deny a permit merely because he believes, whether reasonably or not, that the activity might "raise public safety concerns to those participating in the event or to the public." Thus, besides impermissibly granting the Sheriff the power to deny the permit based on his "mere opinion," Hague, 307 U.S. at 516, the Ordinance impermissibly grants the Sheriff the authority to enforce a "heckler's veto."See e.g., Forsyth County v. Nationalist Movement, 505 U.S. 123, 134-35

23

(1992); see also Church of the American Knights of the Ku Klux Klan (CAKKKK) v. Gary, 334 F.3d 676, 680-81 (7th Cir. July 2, 2003) (It is well-established "that a permit for a parade or other assembly having political overtones cannot be denied because the applicant's audience will riot. To allow denial on such a ground would be to authorize a 'heckler's veto.'" (internal citations omitted)).

Furthermore, the rationales that might justify granting a government official limited discretion in issuing permits for large-groups in a public park simply do not extend to granting the same (or in this case more) discretion in deciding to issue a permit to five people in all public areas. As Judge Posner, the author of the Seventh Circuit's decision that was affirmed by the Supreme Court in Thomas, has recently made clear in distinguishing Thomas, "[t]he use of parks for demonstrations involves . . . complexities not involved in street rallies." CAKKKK v. Gary, 334 F.3d at 683. He also noted that in Thomas the parks "were being overwhelmed by thousands of applications." Id. Thus, the grant of some limited discretion in that case was fueled by the need to expeditiously process a large volume of applications for the purpose of coordinating various types of activities in a limited amount of space. That is not the case here.

Furthermore, contrary to the dissent's suggestion, after-the-fact judicial review does not remedy this over-broad grant of discretion. See City of Lakewood,

24

486 U.S. at 771 ("[e]ven if judicial review were relatively speedy, such review cannot substitute for concrete standards to guide the decision-maker's discretion."); Cantwell, 310 U.S. at 306 ("[T]he availability of a judicial remedy for abuses in the system of licensing still leaves that system one of previous restraint which, in the field of free speech and press, we have held inadmissible. A statute authorizing previous restraint upon the exercise of the guaranteed freedom by judicial decision after trial is as obnoxious to the Constitution as one providing for like restraint by administrative action.").

The Ordinance also is not narrowly tailored. While the County has a substantial interest in protecting public safety and the free flow of traffic, this Ordinance utterly fails to achieve the "appropriate balance between the affected speech and the governmental interests that the ordinance purports to serve." Watchtower Bible and Tract Society of New York, Inc. v. Village of Stratton, 536 U.S. 150, 165 (2002). The scope of the ordinance is sweeping--requiring that any group of only five or more people who wish to exhibit "[a]ny expression of support for, or protest of, any person, issue, political or other cause or action" on "any sidewalk, street, public right of way or other public property" first obtain government approval before engaging in protected speech (emphasis added). The Ordinance is overly broad in at least two crucial respects. First, it applies to small

25

intimate groups that do not create a legitimate threat to the County's interests. See Majority Opinion at *15, n.13. Second, it requires a permit in virtually all public places. See Hill, 530 U.S. at 728 ("[W]e must, of course, take account of the place to which the regulations apply in determining whether these restrictions burden more speech than necessary."); see also Davis v. Francois, 395 F.2d 730, 736 (5th Cir. 1968)(striking down ordinance in part because it "restricts picketing on both the sidewalks and streets; it extends to all kinds of facilities in the city though each may present different considerations").

The substantial interest the County has in protecting public safety and ensuring the free flow of traffic are simply not advanced by the breadth of this permit requirement, which applies to every group of five people standing in a park, sidewalk, or countless other public places, who wish to support a political candidate, a local ordinance, or perhaps even a soldier coming home from war. "It is offensive--not only to the values protected by the First Amendment, but to the very notion of a free society-- that in the context of everyday public discourse a citizen must first inform the government of her desire to speak to her neighbors and then obtain a permit to do so." Watchtower Bible, 536 U.S. at 165-66. "Consequently, in attaining a permissible end, the [County] has exercised its power in a way that unduly infringes on protected freedom." Davis, 395 F.2d at 736.

26

RONEY, Circuit Judge, dissenting:

I respectfully dissent. I would affirm the district court for the reasons set forth in its Order denying the preliminary injunction. Because that Order was not published, I attach it here as Appendix I. As to whether the Ordinance is content-neutral, I note the district court's statement that "Plaintiffs, however, do not assert that the protest ordinance ['Any expression of support for, or protest of, any person, issue, political or other cause or action which is manifested by the physical presence of persons, or the display of signs, posters, banners, and the like'] discriminates based upon the viewpoint of the speaker or the subject matter of the speech." Order Denying Preliminary Injunction, at 10 (corresponding text of Augusta-Richmond County Code § 3-4-1(e) added).

I call special attention to the purpose of the Ordinance and the legislative intent, by which it should be interpreted, by quoting Augusta-Richmond County Code § 3-4-11(d):

> (d) *Intent*. It is the specific intent of the Commission in passing this ordinance to regulate only the time, place and manner of such events and not to regulate the specific content or message of any speech by any applicant hereunder. Only public safety and other concerns as stated herein shall be considered by the Sheriff in the decision to issue or deny a permit hereunder.

I also note that the Ordinance requires that, upon an appeal of the denial of

27

an application for permit in whole or in part, the Sheriff must instigate legal proceedings in a court of competent jurisdiction, and "Augusta shall have the burden of demonstrating the validity of the denial of the permit as applied for by the applicant." § 3-4-11(c). Stated differently, the Sheriff's denial of an application for permit is "enforceable upon review," which has been one factor considered by the Supreme Court in similar constitutional challenges. *See Thomas v. Chicago Park Dist.,* 534 U.S. 316, 324 (2002).

This Ordinance was modeled after the ordinance that was unanimously upheld by the Supreme Court in *Thomas v. Chicago Park District.* 534 U.S. at 326. Here, the challenged Ordinance quotes the *Thomas* ordinance nearly *verbatim* for six of the eleven factors for the official's consideration of the permit application. *Compare* 534 U.S. at 318 n.1, quoting Chicago Park Dist. Code, ch VII, § C.5.e(1 to 11) *with* Augusta-Richmond County Code § 3-4-11(b)(3)(a to i). It also encompasses a seventh *Thomas* factor by requiring an application fee and indemnification agreement in a different provision of the Ordinance. *Compare* 534 U.S. at 318 n.1, listing § C.5.e(2) *with* § 3-4-11(a)(3). In fact, the challenged Ordinance here adds two other tailored factors relating to an "unreasonable disturbance" of the peace and an "unduly restriction" of traffic in the requested permitted area. *See* § 3-4-11(b)(3)(f), (g). The remaining four *Thomas* ordinance

28

grounds not quoted or in some way embodied in the Ordinance challenged here relate to double-booking a public park for an event and the sale of goods in a park, factors that are simply not relevant here. *See* 534 U.S. at 318 n.1 (listing § C.5.e(6), (7), (8), (10)). The factors that must be considered by the Sheriff are far from "vague, undefined and completely subjective," as is argued, and are firmly cut from the same pattern of the unanimously upheld *Thomas* ordinance.

For example, the challenged ordinance in *Thomas* required a finding that the intended use or activity "'*would present an unreasonable danger to the health or safety of the applicant, or other* users of the park . . ..'" 534 U.S. at 318 n.1 (quoting § C.5.e(9)) (emphasis supplied). Section 3-4-11(b)(3)(e) of the Augusta-Richmond Ordinance states that the proposed plan submitted by the applicant may be denied by the Sheriff if the applicant "*would present an unreasonable danger to the health or safety of the applicant, others* participating in the event or other members of the public at large." (emphasis supplied). In order for governmental bodies to provide adequate police protection, traffic control, and further public safety considerations to "others participating in the event or other members of the public at large," it is essential that governmental bodies have advance notice of protests and demonstrations and information concerning size, location, and manner of protests such that it can effectively make proper logistical arrangements. In my

29

judgment, the plaintiffs have not satisfactorily distinguished the application of the principles therein set forth from their application to the Ordinance here.

As to the minimum number of people that requires such a permit as approved by *Thomas*, the decisions of local legislative bodies as to what constitutes a threshold number to require a permit intended to protect the safety of a community's citizens should not be arbitrarily rejected. Each community is different as to the configuration of streets, sidewalks, public parks, traffic flow and other relevant considerations which are not apparent in a facial challenge to an ordinance. The plaintiff does not here make an "as applied" challenge to the Ordinance.

I would therefore affirm the district court's denial of the plaintiffs' request for preliminary injunctive relief.